## Sewickley Water Works Commissioners *v.* Sewickley Borough, Appellant.

[Marked to be reported.]

*Boroughs—Water works—Special commission—Powers of borough council—Control of streets, water, etc.—Act of Feb. 21, 1873.*

Under the act of Feb. 21, 1873, P. L. 147, a board of water commissioners was created to construct, maintain and operate water works for the borough of Sewickley. The money to erect the works was to be furnished by the borough by an issue of bonds, and the borough council was to pay the interest on the bonds out of the water rents. The commissioners were to report annually to the council, and to pay over to the borough semiannually all the money in their hands. *Held,* (1) that the commissioners had no interest or ownership in the water works but were mere agents for constructing and operating them; (2) that the borough could, without the consent or permission of the commissioners, use the water from the water works to sprinkle the streets and to lay sewers.

Argued Nov. 2, 1893. Appeal, No. 229, Oct. T., 1893, by defendant, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1892, No. 555, awarding injunction on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity for injunction.

The bill averred that plaintiffs were a public corporation, incorporated by act of Feb. 21, 1873, P. L. 147, for the purpose of erecting and maintaining water works to supply with water the inhabitants of the borough of Sewickley and adjoining townships. That defendant, the borough of Sewickley, by its burgess and council, did, during the summer of 1891, through an employee of said defendant, i. e. the driver of a sprinkling cart, open the fire plugs and use the water for sprinkling certain streets in said borough, contrary to, and in violation of, the rules and regulations adopted by said plaintiffs, the Commissioners of the Sewickley Water Works, and after a refusal to consent thereto had been communicated in writing to said burgess and council. And again during the summer of 1892 the said defendant, the borough of Sewickley, by its burgess, Geo. H. Anderson, has authorized contractors laying sewer pipes in said borough to open said fire plugs and use the water at will, in

violation of the rules and regulations of, and in defiance of the refusal of, said water commissioners to consent thereto. And said defendant, the borough of Sewickley, still continues, at will, to open said fire plugs and use the water as aforesaid, and has announced its intention and determination to open said fire plugs and use the water whenever and however it may desire so to do, in utter disregard and defiance of any rules or regulation of said plaintiff, the Commissioners of the Sewickley Water Works, and the act of assembly aforesaid.

The bill prayed an injunction. Defendant filed an answer denying plaintiffs' right to relief. The case was heard on bill, answer and agreement as to facts.

The court entered a decree granting an injunction, quoted in the opinion of the Supreme Court.

*Error assigned* was decree, quoting it.

*Thomas Patterson, Edwin Z. Smith* with him, for appellant. —A glance at the act shows throughout a careful intention to make the entire water works system borough property. The titles are taken in the name of the borough, the bonds are issued by the borough, any deficit in revenue is made up by the borough. More than this, the water commissioners are directed annually to account to the borough councils for their receipts and expenditures, and semi-annually to pay any moneys in their hands, to the borough treasurer. There is nothing in the act which intimates an intention to exclude the borough from the use of the water for proper public purposes.

The sewers are operated by a system of flushing them from a tank, at the head of each sewer, which gradually fills from a small pipe and discharges from a siphon through the sewers, washing them thoroughly. This system, in turn, would have to be abandoned, unless the commissioners saw fit to approve it.

The legislature never intended to make the borough absolutely subordinate to the water commission, and to place in the hands of the latter body a veto power upon ordinances affecting public health, improvements, police and protection against fire.

*John N. White,* for appellee.—The commission contend that, under the act creating the commission, they have the entire supervision, management and control of the works.

If this claim of councils is sustained, the commissioners cannot " establish and enforce all such rules and regulations as may be necessary and proper for the maintenance and successful operation of the works."

If this claim is sustained the council may use the water for the benefit of a few persons, living on certain streets, and not for the benefit of all. Certain streets will thus be sprinkled, without any expense to those residing thereon, while other inhabitants on other streets must pay for the privilege of sprinkling the street in front of their properties.

If councils have the right to sprinkle streets as they claim, it will deprive the commission of the revenue they would otherwise receive from the streets so sprinkled.

It has never been denied that the works are the property of the borough, but the act takes the custody, control and management of the works out of the hands of the burgess and councils and vests them in the board of commissioners, who act for and represent the borough and the citizens.

The commission will not deny the use of the water for proper public purposes, but they claim the entire custody, management and control of the work, pipes, hydrants, etc., and the right to determine how and when the water shall be used on the streets, etc., and for what public purposes.

OPINION BY MR. JUSTICE GREEN, December 30, 1893:

The defendant was incorporated as a borough in the year 1853, under the general borough law of 1851, and of course possessed all the powers and authorities conferred upon such municipalities by the provisions of that law. Among these is the power, " To regulate the roads, streets, lanes, alleys, common sewers, public squares, common grounds, foot walks, pavements, gutters, culverts and drains, and the heights, grades, widths, slopes and forms thereof, and they shall have all other needful jurisdiction over the same."

" To make such other regulations as may be necessary for the health and cleanliness of the borough."

To borrow money and to lay and collect taxes, general and special, and " the money so raised and collected shall be used, laid out and expended for the following purposes, and none other, namely: for the purpose of purchasing, erecting and

maintaining such fire plugs and hydrants, gas lamps, posts, gas or kerosene lamps, and hose for fire engine companies, as may be required to supply the said boroughs with a sufficient supply of water for the extinguishment of fires, cleaning the streets, and other public purposes, and with gas or kerosene oil for the purpose of properly lighting and illuminating the streets, lanes, alleys and other public places in said boroughs, of paying for said gas, water and hose for fire engines, and defraying the expenses in making all necessary attachments to gas and water mains in said boroughs, together with all other necessary expenses in securing a full, sufficient and abundant supply of gas, water and hose for fire engines, in and throughout the said boroughs for the said purposes, subject to all the further provisions of this act."

By the act of May 24, 1878, sec. 1, P. L. 118, 1 Purd. Dig. 206, pl. 83, it is enacted that, " The proper authorities of any borough of this commonwealth, owning or controlling water works for the supply of water to the inhabitants of said borough whenever the schedule of water rents shall have been fixed or limited by general or special act of assembly, shall be and are hereby authorized to change the rates or schedule of rents, from time to time, so that the same shall not at any time exceed the rates now limited by law."

By a special act approved Feb. 21, 1873, a method of supplying the borough of Sewickley with water was provided by means of a board of five commissioners, who were named in the act, and who were clothed with all powers necessary for the erection, maintenance and operation of water works to supply the inhabitants with water. They were authorized to fix and change a schedule of water rents, and to collect the same, and they were required to furnish to the borough council " a. particular and detailed statement of all costs in the construction of the works," and also to make annually to the councils " a full and detailed report of all receipts and expenses, and the condition of said works, and shall pay over to the borough treasurer, semi-annually, the balance of money in their hands."

The money to pay the cost of erection was to be furnished by the borough by an issue of bonds not exceeding sixty thousand dollars, and the borough council are to make provision for the payment of the interest and principal of the bonds, with

the money received from the water rents, and from taxes to be levied for the purpose.

From this review of the legislation affecting the subject it will be seen that the actual work of constructing, maintaining and operating the water works was to be done by the board of water commissioners, who were to report annually to the council of the borough their transactions, and to pay over to the borough, semi-annually, all the money in their hands. As a matter of course the borough in its corporate capacity is the sole owner of the works and all their accessories of pipes, plugs, hydrants, buildings, machinery and all fixtures and appurtenances belonging thereto, and the board of commissioners has no interest or ownership in any of these. They are mere officers through whose agency the works were constructed, maintained and operated, with full powers for effectuating those purposes. They were constantly changing by the expiration of their terms of office, and by the election of successors.

The occasion of the present contention was of a very trifling character, and from the tenor of the correspondence seems to be more a matter of personal feeling than of any actual substantial controversy. It appears that the borough authorities, deeming it necessary to have the streets sprinkled with water, employed a man with a watering cart to do the work, whereupon the commissioners objected that this was done without their consent, and passed a resolution declaring that the borough authorities "in so doing have acted without any lawful right." In the bill complaint is made, not only of the sprinkling of the streets, but also that contractors laying sewer pipes had opened the fire plugs and used the water in their work. The answer alleges that as to the use of the water for sprinkling the streets it was done because the roads and streets of the borough had become very dusty, and the dust and sand were blown by the wind over the properties along the line of the principal streets, and that the councils were strongly petitioned by the citizens of the borough to employ a sprinkling cart to lay the dust on the streets and relieve them from the nuisance occasioned thereby. That in complying with this request the councils acted for the best interest of the inhabitants, and without any thought or intent of interfering with the rights or duties of the commissioners. In regard to the use of the water in con-

structing the sewers, the answer alleges that in July, 1892, the citizens of the borough, by a large majority, voted to increase the debt of the borough to the amount of $25,000 for the purpose of street improvements, and the councils proceeded, in accordance with the action of the citizens, to contract for the laying of sewers on some of the principal streets of the borough, and also for the paving of certain streets with fire brick pavement. That the contractors "informed the borough that they must have a moderate supply of water to use in putting down ditches, and for other purposes in and about the said public works;" and that the borough engineer had stated he would not be responsible for the result of the work unless a proper supply of water could be had. That the council applied to the commissioners for water for these purposes, and, receiving an ambiguous reply, which they understood to be an assent, proceeded to use the water moderately and without waste, when the supply was shut off and a further supply refused. The answer further alleges that under the imperative necessity of completing the public works the borough used the water in a careful and prudent way, and only so far as was necessary for the prosecution of the work, and that the daily use of the water for some days previous to the filing of the answer was believed to have been less than ten barrels.

To the answer no replication was filed and no testimony was taken, but it was agreed that certain correspondence which had passed between the borough and the commissioners should be considered as having been taken before an examiner, and the case was heard in the court below upon the bill and answer, and the correspondence which is printed in the appellant's paper book.

The correspondence, aside from the matters of a personal character, consists of an allegation by the commissioners that the borough had no legal right to use the water for the purposes mentioned, without first obtaining the consent of the commissioners, and of an assertion by the borough that they did have such right. The presence or absence of such right is the only real subject of contention here. The court below granted a perpetual injunction restraining the borough "from in any way opening fire plugs, except in cases of fires, or hydrants, or in any manner using the water supplied through the

pipes and mains of the said the Commissioners of the Sewickley Water Works, without the consent of the said commissioners, or their authorized agents, first duly had and obtained."

It thus happens that the borough is absolutely forbidden to use its own water, brought into the borough in its own pipes, from its own reservoir or other sources of supply, and distributed through its own streets, to be drawn from its own fire plugs for the absolutely necessary public purpose of sprinkling its own streets, and using in the laying of its own sewers. The allegations of the answer being responsive to the averments of the bill and uncontradicted either by the bill or by any testimony, must be accepted as verity, and, the answer having declared that an application was made to the commissioners for their consent to use the water for the public purposes stated, the supply was shut off and a further supply refused, that fact must be taken as established.

This state of facts presents the question, Do the water commissioners possess the legal right to control the borough in the use of water for the public purposes stated? It is very plain that the commissioners have no power whatever to determine when or whether the streets require sprinkling, or when or whether it is necessary to construct sewers. No such authority is conferred upon them by the act of 1873, under which they were brought into existence, and of course there is no other source from which authority can be derived. On the contrary the borough is expressly clothed with all power to regulate the streets and sewers. The borough is also required to use the money raised by loans and taxation to furnish " a sufficient supply of water for the extinguishment of fires, cleansing the streets and other public purposes." It is at once apparent that the sole and exclusive right and power to determine when water is required for cleaning streets and constructing or using sewers is vested in the borough. But if the borough possesses this right and power it cannot be trammeled or controlled by any other authority in the full performance of its functions in these regards. It must have the water, and it has the sole power to determine when and to what extent the water must be used. It is the exclusive owner of the entire water supply and works of the municipality, the purposes for which it needs the water are of an entirely public character.

and to deny the borough the right to use the water for those purposes is simply to prevent it from performing its plain legal duties. We are very clear that this power is possessed by the borough exclusively, and that the water commissioners have no right or power to interfere with the borough in the exercise of this class of its functions. It is not necessary for the borough to obtain the consent of the water commissioners for the use of the water supply for these purposes, simply because the commissioners have no power, or authority, or control over the subject.

The answer avers that the borough only made a moderate and prudent use of the water for these purposes, and this is not contradicted or disproved. But if in any given case the borough should abuse its right to the injury of the citizens the courts are always open for redress. As the complaint of the commissioners is that their consent was not obtained, and that the borough has no' right to use the water even for public purposes without such consent, and we do not agree to that view of the subject, it follows that the decree of the court below must be reversed.

Decree reversed and bill dismissed at the cost of the appellees.