

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 17, 1959

Honorable Raymond W. Vowell
Executive Director
Board for Texas State Hospitals
    and Special Schools
Austin, Texas

Opinion No. WW-689

Re: Questions relating to
contract between State
Board of Control and
City of Big Spring for
supplying water to Big
Spring State Hospital.

Dear Mr. Vowell:

In your letter of March 5, 1959, you have stated the
following:

> "Acts 1937, 45th Legislature, page 793
> chapter 388, codified as Article 3185a, V.C.S.,
> provided for the establishment of a State mental
> hospital West of the one hundredth meridian. At
> the time of the passage of said Act, the Board
> of Control was charged with the responsibility
> for the operation of State Hospitals and chose
> the City of Big Spring as the location. It would
> appear that in the selection of this site, the
> Board of Control was at least partly influenced
> by the donation of the hospital site by the City
> of Big Spring and the granting by the City of
> certain favorable utility contracts.

> "On October 22, 1937, the City of Big
> Spring, by its mayor, and the Board of Control,
> by its Chairman, contracted whereby the City
> would supply water to the hospital at a rate of
> .10¢ per 1,000 gallons. The contract further
> provided that the 'contract with reference to
> furnishing of water to said hospital is and con-
> stitutes a material consideration influencing
> the Board of Control to locate said hospital at
> said site, and this agreement with reference to
> the furnishing of water by the City to said

> hospital shall continue in full force and effect
> and is not subject to being revoked as long as
> the State of Texas shall in good faith maintain
> and operate said hospital on said site.'

> "Quite recently the City of Big Spring has
> called to our attention the fact that they are
> furnishing water to us at a price much less than
> their cost and in connection therewith have re-
> quested this Board to re-negotiate a contract on
> terms more favorable to the City. In presenting
> their case they have prepared a brochure contain-
> ing several exhibits which we enclose herewith
> for your information. Being aware of the consti-
> tutional and statutory limitations of the powers
> of this Board, we request your opinion concern-
> ing this matter."

You have asked the following two questions:

> "1. Is the contract by the City of Big
> Spring and the Board of Control valid?

> "2. If your answer to the above is in
> the affirmative, then does this Board have the
> legal authority to re-negotiate another contract
> on terms more favorable to the City of Big Spring
> and at the same time terminate the existing con-
> tract?"

It should first be noted that a city has dual func-
tions, one of which is governmental or legislative, and the
other proprietary business or corporate. The rule was set
out in the case styled City of Crosbyton v. Texas New Mexico
Utilities Co., 157 S.W.2d 418 (err.ref.). In this case also
the question arose as to whether a city could contract for an
indefinite time. It was said:

> "A city's functions, enjoined on it by law
> are 'governmental' in nature and can neither be
> ceded nor exercised in such manner as to bind
> city's future course or prevent modification or
> change of its policy, if its governing body
> thereafter so wishes.

> "A city's functions, such as the exercise
> of police power, by which it promotes or pro-
> tects general welfare, comfort and convenience of
> people maintains supervision and control over its

own property, or enacts legislation under
which peace and good order of society is regu-
lated, are 'governmental functions', over which
city's governing body must retain exclusive con-
trol.

"A city's governmental functions cannot
be delegated nor bartered away, and any effort
to do so or any contract having effect of pass-
ing them to others or tying city's hands so that
it is impotent to change its policy respecting
them, is unconstitutional and void.

"A city may exercise its proprietary or
business functions, as by entering into contract
for private interests of its inhabitants or it-
self, in same way and to same extent as individuals
or private corporations." (Emphasis ours).

The present contract between the City of Big Spring
and the State Board of Control does not interfere in any way
with the City's power to contract for the supply of water to
the City or to regulate rates as evidenced by the fact that the
City has changed its source of water supply and has adjusted
its water rates since entering into this contract with the
State Board of Control. This is a contract entered into by
the City of Big Spring in its proprietary capacity, and as
the case cited above points out, the City can contract validly
in that capacity as any individual can.

It should also be noted that this is an express con-
tract wherein in Section 4 it recites:

". . . this contract with reference to
furnishing of water to said hospital is and
constitutes a material consideration influenc-
ing the Board of Control to locate said hospital
at said site, and this agreement with reference
to the furnishing of water by the City to said
hospital shall continue in full force and effect
and is not subject to being revoked as long as
the State of Texas shall in good faith maintain
and operate said hospital on said site."

In the case styled Fooshee & Hungerford v. City of
Victoria, 54 S.W.2d 220 (error dism.), where the Plaintiff
contracted with the city for engineering services (a proprie-
tary function of the city), it was held:

"However, inadvisable and shortsighted it may have been on the part of a city administration to have made the contract with appellants, . . . it has no more power to arbitrarily cancel and repudiate the contract than any citizen would have. . . . There is nothing to indicate that fraud or deception was used to procure the contract or that by inefficiency or any valid reason appellants should not be permitted to do the work named in the contract."

In Panhandle Const. Co. v. City of Spearman, 89 S.W.2d 1053, it was stated:

". . . a city may be estopped to deny the validity of a contract which it had authority to make, . . . If the city accepts performance from the other party and enjoys the benefits accruing to it therefrom, it is bound to perform the obligations imposed upon it by the contract, . . ."

The difference between the rate paid by the Big Spring State Hospital and other users of water service in Big Spring is not a violation of the common law rule which requires "the rates charged for such services shall be equal and uniform," for the following reasons:

The law against unreasonable discrimination in rates rests on public policy. It is forbidden because it is against the interest of the public, which requires that all shall be treated alike under like circumstances. Discrimination, however, in favor of the public, is not opposed to public policy because it benefits the public generally by relieving them of part of their burden.

The Big Spring State Hospital pays no taxes, carries on no competitive business, makes no money, serves the public only. In the case of this contract between the City of Big Spring State Hospital and the State of Texas, whatever advantage the State has over general customers serves to benefit the latter in the aggregate. There is no discrimination which is inimical to the public good and, there would be no violation of public policy even if the water were furnished free. New York Telephone Co. v. Seigel Cooper Co., 202 N.Y. 502, 96 N.E. 109; Fretz v. City of Edmond, 66 Okla. 1169, 168 Pac. 800, (1917); Preston v. Board of Water Commissioners of the City of Detroit, 117 Mich. 589, 76 N.W. 92; City of Superior v. Douglas County Telephone Co., 141 Wisc. 363, 122 N.W. 1023; State ex rel. Mt. Sinai Hospital of Cleveland v. Hickey, 137 Ohio 474, 30 N.E.2d 802.

In *Twitchell v. City of Spokane*, 55 Wash. 86, 104 Pac. 150, it is said:

> ". . . Water was furnished by the City to itself and also to several charitable institutions free of charge. . . .

> ". . . It is claimed that the rate charged amounts to an excessive tax on the community. But water rates are not taxes. The consumer pays for a commodity which is furnished for his comfort and use. . . . The right of the city to furnish water for municipal and charitable purposes free can hardly be doubted. Sewickly Waterworks v. Sewickley, 159 Pa. 194, 28 Atl. 169; Detroit Water Commissioners v. Detroit Citizens' Street Ry. Co., 131 Mich. 1, 90 N.W. 657, 91 N.W. 171. . . ."

Since the administration of a city public waterworks system of necessity requires that some discretion be exercised by the Water Board in setting the water rates, so long as the rates charged are reasonable, equal and uniform, the consumer has no grounds to complain of the rate charged as being too high or that a lower rate is possible, or that he is being forced to pay for free water to the city or public institutions. *Preston v. Board of Water Commissioners of City of Detroit, supra.*

Our answer to your first question, therefore, is that the contract dated October 22, 1937, between the City of Big Spring, Texas, and the Board of Control of the State of Texas, which agrees to furnish water to the Big Spring State Hospital at the rate of Ten Cents (10¢) per one thousand (1,000) gallons of water, is a valid and subsisting contract. It is our considered opinion that the City of Big Spring was acting within its authority at the time the agreement was made. The contract was valid and is a continuing contract, and so long as the State of Texas owns and operates the Big Spring State Hospital at its present location, the City of Big Spring is legally bound to furnish water for the hospital at the rate of Ten Cents (10¢) per one thousand (1,000) gallons of water.

Your second question is whether "this Board" has the legal authority to re-negotiate another contract on terms more favorable to the City of Big Spring, and at the same time terminate the existing contract.

We would point out that Section 2 of House Bill No. 1, Acts of the 51st Legislature, Regular Session, 1949, Chapter 316, Page 588, codified as Section 2 of Article 3174b of Vernon's Civil Statutes provides:

> ". . . the control and management of, and all rights, privileges, powers, and duties incident thereto including building, design and construction of the Texas State Hospitals and Special Schools which are now vested in and exercised by the State Board of Control shall be transferred to, vested in, and exercised by the Board for Texas State Hospitals . . ."

Therefore, the subject matter involved in this question would be subject to your jurisdiction.

It is our opinion, however, that this is a valid and subsisting contract and the Board has no right to and cannot terminate said contract or re-negotiate said contract so long as the State of Texas in good faith maintains and operates the Big Spring State Hospital at the City of Big Spring, Texas.

## SUMMARY

The contract of October 22, 1937, between the City of Big Spring, Texas, and the Board of Control of the State of Texas, relating to furnishing water to the Big Spring State Hospital, is a valid and subsisting contract; and so long as the State of Texas in good faith maintains and operates the State Hospital at the City of Big Spring, Texas, the State of Texas cannot validly re-negotiate the contract and agree to pay, for the first three hundred thousand (300,000) gallons of water per day

supplied to said hospital, more than the rate of Ten Cents (10¢) per one thousand (1,000) gallons of such water delivered to said hospital.

Very truly yours,

WILL WILSON
Attorney General of Texas

By George C. Reed

George C. Reed
Assistant

GCR:rm:zt

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Grundy Williams
Paul W. Floyd, Jr.
L. P. Lollar

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Leonard Passmore