[No. 26074. Department Two. June 2, 1936.]

THE STATE OF WASHINGTON, *on the Relation of West Side Improvement Club, Plaintiff*, v. THE DEPARTMENT OF PUBLIC SERVICE *et al., Respondents*, THE CITY OF BREMERTON, *Intervener.*[1]

*Ralph E. Purves*, for relator.

*The Attorney General* and *Don Cary Smith, Assistant* (*Frederick J. Lordan* and *Will M. Derig*, of counsel), for respondents.

*H. E. Gorman*, for intervener.

[1]Reported in 58 P. (2d) 350.

*A. C. Van Soelen, Walter L. Baumgartner, Howard Carothers, Hilton B. Gardner, Bartlett Rummel, G. M. Ferris, Louis A. Conyard, H. S. Dawson, Don M. Tunstall, Lester T. Parker, T. P. Gose, Thomas L. O'Leary, James P. H. Callahan, J. H. Jahnke, D. Elwood Caples, A. A. Lafromboise, M. C. Hazen, N. M. Sorenson, Jno. A. Homer,* and *I. B. Knickerbocker, amici curiae.*

MAIN, J.—This is an original application in this court for writ of mandate.

The city of Bremerton owns and operates a water system by which it furnishes water to the inhabitants of the city, and also to inhabitants not living within the corporate limits of the city but adjacent to it. The relator, the West Side Improvement Club, is a voluntary association composed of residents residing adjacent to, and outside of, the limits of the city of Bremerton, who are users of water furnished by the city.

January 14, 1936, the relator, the West Side Improvement Club, filed with the department of public service an application for that department to hold a hearing and determine the price that water users outside of the city should pay for the service. January 16, 1936, the respondent, the department of public service, dismissed the application on the ground that it was without jurisdiction to regulate the price or service of a municipally owned water system for service furnished outside of the corporate limits of the city. Subsequently, this proceeding was brought against the respondents, the department of public service and its members.

The question to be determined is whether the city or the department has jurisdiction to fix the rate or price that water users outside of the city limits shall pay for the service from a municipally owned water

system. Without specifically referring to the acts of the legislature, it appears to be definitely settled that (a) a city owning a water system may extend its service to those living outside of its corporate limits; and (b) that within the corporate limits the city has the right to control the price or rate at which the service will be rendered.

Inquiry must then be directed as to whether, for the service outside of the corporate limits, the department of public service or the city has the right to fix the rate or price, and this depends upon the construction to be given to certain statutory provisions.

In 1911, the legislature passed an act (chapter 117, Laws of 1911, p. 538, Rem. Rev. Stat., § 10339 [P. C. § 5528] *et seq.*) relating to public service properties and utilities, and providing for the regulation of the same. This was a comprehensive act and was broad enough in its general terms to include municipally owned water systems. Section 101, p. 608, Rem. Rev. Stat., § 10450 [P. C. § 5628], of the act provides that it shall be the duty of the commission (department of public service) to enforce the provisions of the act and all other acts affecting public service companies, "the enforcement of which is not specifically vested in some other officer or tribunal." Section 105, p. 610, Rem. Rev. Stat., § 10454 [P. C. § 5632], provides that nothing in the act shall authorize the commission to make or enforce any order relating to rates or tolls for any street railroad, telephone line, gas plant, electric plant or "water system owned and operated by any city or town," but that all other provisions of the act shall apply to public utilities owned by a city or town. Under this statute, the public service commission (department of public service) had no authority to fix the rates for a water system owned by a city or town.

In 1917, the legislature, apparently for the first time (chapter 12, Laws of 1917, p. 38), authorized a city to extend a water system owned by it so as to serve users living outside of its corporate limits. Section 1, p. 38, Rem. Rev. Stat., § 5525 [P. C. § 4814], of this act provides that, whenever any city or town in the state owns any water utility and desires to extend such utility beyond its corporate limits, it shall be lawful for it to do so, and to sell, dispose of, and distribute its product or service to any other municipality, or to any person, firm or corporation desiring to purchase the same, and provides that:

"Such portion of such public utility that extends beyond the corporate limits of any city, shall be operated at such prices, and under such rules and regulations, as may be prescribed by the public service commission: . . ."

Here is an express provision giving the then public service commission the right to fix the price of the service of a water system furnished to users outside of the corporate limits.

The law appears to have remained in this situation until 1933, when the legislature, at the extraordinary session (chapter 17, Laws of 1933, Ex. Sess., p. 48, Rem. 1934 Sup., § 9502-1 [P. C. § 1238-11] *et seq.*), provided otherwise. Section 1, p. 48, Rem. 1934 Sup., § 9502-1 [P. C. § 1238-11], of this act provides that, when any city or town in the state owns and operates any municipal waterworks system and desires to extend such utility beyond its corporate limits, it shall be lawful for such city to acquire, construct and maintain any addition to, or extension of, such system, and to sell, dispose of and distribute water to any other municipality, water district, community, corporation or person desiring to purchase the same. Section 3,

p. 49, Rem. 1934 Sup., § 9502-3 [P. C. § 1238-14], of the act provides that any such city or town shall have the power to enter into a contract with any such outside municipality, community, corporation or person for furnishing them with water from a municipal waterworks system,

" . . . fixing the terms upon which such outside distribution systems will be installed and the rates at which and manner in which payment shall be made for the service rendered."

The question, above stated, is reduced to whether chapter 17 of the Laws of 1933, Ex. Sess., p. 48, Rem. 1934 Sup., § 9502-1 [P. C. § 1238-11] *et seq.*, by implication, overrules the provision in § 1 of chapter 12 of the Laws of 1917, p. 38, Rem. Rev. Stat., § 5525 [P. C. § 4814], which gave the public service commission the right to fix the prices to users outside of the corporate limits of a city. There is no express repeal of the provision in the Laws of 1917. It will be admitted, as stated in the relator's brief, that the rule is that repeals by implication are not favored, and will only be indulged where the implication is a necessary one; and, to work a repeal by implication, the later statute must be irreconcilable with the provisions of the former act. *White v. North Yakima,* 87 Wash. 191, 151 Pac. 645; *Kruesel v. Collin,* 171 Wash. 200, 17 P. (2d) 854.

Referring again to the two statutes, it will be noted that, in the 1917 act, it is provided that a municipal water system, for service rendered outside the corporate limits of the city, shall be operated at "such prices" as may be prescribed by the public service commission. Section 3, p. 49, of chapter 17 of the Laws of 1933, Ex. Sess., Rem. 1934 Sup., § 9502-3 [P. C. § 1238-14], provides that the city or town shall have the power to enter into a contract with outside users

for the purpose of furnishing them with water from the municipal waterworks system, fixing the terms upon which such outside distribution system will be installed, and the "rates" at which and the manner in which the payment shall be made for the service rendered.

It thus appears that, in the act of 1917, the public service commission is given the power to fix the prices of the service outside of the city, and in the act of 1933, the city is given the power to fix the rates of the service. The price of the service and the rates for the service must necessarily mean the same thing. Both are the measure of compensation which the city shall receive. It follows that there is an irreconcilable conflict between the two acts, and the later act, that of 1933, prevails.

It is said, however, that the city has the right to fix the rates of the service in the first instance, but that, after that, the department of public service has the power to regulate the rates. But we do not think that this contention can be sustained. If the city only has the right to fix the rates in the first instance, and then the department of public service has the right thereafter to fix the rates or price, the statute of 1933, giving the city the right to fix the rates at which it will render the service, would mean very little so far as the city was concerned, because, after it should fix a rate under the terms of the 1933 act, it could be immediately changed by the department of public service. We are clear that it was the intention of the legislature, by chapter 17 of the Laws of 1933, Ex. Sess., p. 48, Rem. 1934 Sup., § 9502-1 [P. C. § 1238-11] *et seq.*, to give the city sole and exclusive jurisdiction over the rates at which it would furnish water to those outside of its corporate limits, and to take from the department of public service the jurisdiction which it had

384

previously had under the act of 1917, even though there is no specific repeal of that act.

The writ will be denied.

MILLARD, C. J., HOLCOMB, BEALS, and BLAKE, JJ., concur.