[No. 2639-42797-1. Division One. March 3, 1975.]

GENEVA WATER CORPORATION *et al.*, *Appellants*, v. THE CITY OF BELLINGHAM, *Respondent*.

*Rusing & Platte, Gary M. Rusing,* and *Dennis M. Hindman,* for appellants.

*Richard A. Busse, City Attorney,* for respondent.

*Daniel F. Sullivan,* amicus curiae.

SWANSON, J.—Geneva Water Corporation, Van Wyck Water District, and Water District No. 2, three water districts located outside of the corporate boundaries of the City of Bellingham (hereinafter generally referred to as "water districts"), appeal from a judgment dismissing their lawsuit in which they alleged that the City's nonresident water rate ordinance is discriminatory, arbitrary, and unreasonable.[1] The water districts primarily sought recovery for claimed overcharges resulting from the allegedly excessive rate differential between resident and nonresident bulk water users, and for repayment of a monthly $1.50 per household surcharge imposed only upon nonresidents. In addition, the Van Wyck and Geneva districts claimed reimbursement for pumping charges imposed only upon nonresidents. All of the water districts asked for an injunction to prohibit the City from charging them more than what the court might determine to be a reasonable water rate. After a nonjury trial, the trial court entered its judgment of dismissal on April 9, 1973, supported by findings of fact and conclusions of law determining that the City's nonresident water rates are not discriminatory, arbitrary or unreasonable.

---

[1]The notice of appeal was directed to the Supreme Court but, by an order dated November 16, 1973, the cause was transferred to this court for determination. Prior to such transfer, authority was granted to Daniel F. Sullivan to file an amicus curiae brief on behalf of the Washington State Trial Lawyers Association.

The factual context of this appeal, as disclosed by the trial court's unchallenged findings, is as follows: The appellant water districts are nonprofit corporations, organized after 1945, which serve a total of 743 members, plus 60 to 67 nonmember retail water customers, all residing outside the city limits of Bellingham. Including the appellants, there are 11 water districts located outside of the city which buy water from the City, and each of the water districts is served by a single connection to the municipal water system.[2] The water distribution systems beyond the City meters are constructed, maintained and owned by the water districts. Each district reads the meters of its retail customers where required, and does its own billing. The water districts purchase water in bulk only, and no connection fee is paid to the City for new users which connect to the individual water district lines. None of the districts has any alternate source of water supply, independent of that of the City or other holders of existing water rights. The water districts provide their own fire protection in the sense that they provide equipment for fire fighting, but they are dependent upon the City's maintenance of adequate pressure within the lines for fire fighting purposes.

Each district pays a base rate on meter readings which is 150 percent of the in-city commercial rate, plus a flat rate surcharge in the monthly amount of $1.50 per household user; the Van Wyck and Geneva districts pay a pumping

[2]Finding of fact No. 6 states in part: "The City of Bellingham operates a municipal water system governed by a Water Board consisting of the City Comptroller, the Mayor, the president of the City Council, the City Engineer, and a private citizen. It services approximately 12,000 users, including industrial, commercial, and residential users. The City, within its own limits, and with outside direct service customers, owns and maintains its transmission and service lines which it repairs and flushes as required. . . . Lateral water lines within the City are generally paid for by residents and developers, and become the property of the municipal water system. Major capital improvements are financed by revenue bonds and other funds of the water utility, including operating revenues. The system was valued in 1937 at $2,000,000 by consulting engineers for the city, and was in the magnitude of several millions by 1945. . . ."

charge, but Water District No. 2, which is gravity fed, does not. In 1971, the Geneva District paid about $14,000 to the City for its water while the Van Wyck District and Water District No. 2 paid the City $3,908 and $14,253, respectively, for the water each received. Within 5 or 6 years prior to the date of trial, Water District No. 2 experienced a lack of pressure in its line and installed a booster pump at its own cost. The City set its water rates in accordance with the advice of consulting engineers, but has not followed every recommendation offered by such consultants.[3]

[3]The trial court also made the following specific findings relating to rates, costs and water use, which are not challenged by the water districts:

The Bellingham water utility services a variety of customers. Single family residences, not metered, pay a flat rate of $5.50 per month. Direct service non-resident single family residences, metered, pay $7.75 per month for the first 2,000 cubic feet, and a fee of $100.00 per connection to be used for mains and reservoirs. Bulk water consumers within the City, metered, pay as follows:

| First | 1,500 cubic feet | $5.50/month |
| Next | 3,500 cubic feet | .24/hundred |
| Next | 15,000 cubic feet | .22/hundred |
| Next | 20,000 cubic feet | .18/hundred |
| Next | 40,000 cubic feet | .14/hundred |
| Next | 80,000 cubic feet | .12/hundred |
| Over | 160,000 cubic feet | .11/hundred |

Plus $1.00 per month for each retail customer. In addition, a $100 connection charge for each residential unit or equivalent above single family residential density to be used for mains and reservoirs.

Bulk water consumers outside the City, metered, pay as follows:

| First | 1,000 cubic feet | $7.75/month |
| Next | 4,000 cubic feet | .36/hundred |
| Next | 15,000 cubic feet | .33/hundred |
| Next | 20,000 cubic feet | .27/hundred |
| Next | 40,000 cubic feet | .21/hundred |
| Next | 80,000 cubic feet | .18/hundred |
| Over | 160,000 cubic feet | .16/hundred |

Plus $1.50 per month for each retail customer. The City receives no connection charge from bulk consumers outside the City.
Finding of fact No. 9.

Outside users not gravity fed were charged $ .10 per hundred cubic feet for pumping until June 1969 when the charge was reduced to $ .04 per hundred cubic feet.
Finding of fact No. 10.

The average cost per retail customer from the total of charges billed by the City, from November 1970 until October 1971 was, in

In addition to the foregoing, which is undisputed, the trial court made the following findings of fact which, in substantial part, are assigned as error by the water districts:

The City provides the management of the municipal water system, without charge to the system for the time expended by salaried city officers such as those on the Water Board, or legal services by the City Attorney. Improvement of property within the City by water service has the effect of improving the City's tax base, while no such benefit accrues to the City by the improvement of property outside the City boundary.

Finding of fact No. 8.

The water system of the City of Bellingham is a complex unified overall system serving both the City and outside users. It is probably impossible to isolate costs and benefits with precision. Present priorities of the City in capital improvements are at the request of or will primarily benefit the water districts in general with particular emphasis on Water District No. 2. The City has, within the last 10 years, completed improvements, primarily in transmission lines and reservoirs, at a cost of $720,000. $450,000 of this amount is reasonably attributed to the benefit of water districts in general and Water District No. 2 in particular.

Finding of fact No. 14.

The proportionate share of the cost of the filtration plant, and the amount attributable in other capital improvements to the benefit of the water districts is in the magnitude of $500,000. Revenue received from the water

---

the Geneva Water Corporation $5.49 per month, in the Van Wyck Water District $5.16 per month, and in Water District No. 2 $4.41 per month.

Finding of fact No. 11.
The total use of water by all outside water districts is in the neighborhood of 2.5 per cent of total water produced and distributed by the City of Bellingham.

Finding of fact No. 12.
In November of 1968 a new filtration plant went into service, at a cost of $3,057,000, including $213,500 in projects referred to in Finding of Fact number XIV, and a federal grant of $1,291,000.

Finding of fact No. 13.

district in the last ten years above a $ .13 per hundred cubic feet cost of supplying and distributing, is about $197,500.

Finding of fact No. 15.

■ In considering the water districts' challenge to the quoted findings, we have concluded, based upon a careful review of the record, that such findings are supported by substantial evidence and therefore the claims that they are in error are without merit. *See State v. Smith*, 84 Wn.2d 498, 505, 527 P.2d 674 (1974). In this connection, it would unduly lengthen this opinion to present our analysis of the record; it is enough to say that we have determined that we must treat the trial court's findings of fact as verities.

The thrust of the water districts' remaining assignments of error is a challenge to all of the trial court's conclusions of law, which state: "The City of Bellingham had reasonable grounds for establishing, for rate making purposes, a separate class consisting of non-resident bulk water users, and breached no duty to fix non-discriminatory rates for water service to plaintiffs." Conclusion of law No. 1. "The City of Bellingham has full authority to regulate the price of water sold provided that rates are uniform for the same class of customers or service." Conclusion of law No. 2. "Plaintiffs' evidence failed to establish that there was no additional cost to the City in supplying non-resident bulk consumers." Conclusion of law No. 4. "Plaintiffs did not maintain the burden of proving the rates established by the City of Bellingham are not just and reasonable as to non-resident bulk consumers." Conclusion of law No. 5. "The City of Bellingham utilized the expert advice of consulting engineers, and did not act arbitrarily or capriciously in establishing the rates, nor in rejecting the concept of pressure valves and retaining the $1.50 per month per retail customer charge to plaintiffs." Conclusion of law No. 6.

The water districts' primary argument on appeal in support of their claim that the trial court's conclusions of law are erroneous is presented in a two-stage analysis: (1) the City created an unlawful discriminatory classification when

it distinguished, for ratemaking purposes, between resident and nonresident bulk users of municipally-supplied water; and (2) assuming arguendo such classification is valid, the water rates imposed by the City are unreasonable and arbitrary.[4]

In considering the first stage of the water districts' argument—that the rate classification distinguishing between residents and nonresidents constitutes unreasonable discrimination—we note that both the water districts and the City recognize that the basic authority for the City's imposition of such a classification must be found in RCW 35.92.010, which provides in part:

A city or town [has] full power to regulate and control the use, distribution, and price [of water from a municipal waterworks]: *Provided*, That the rates charged must be uniform for the same class of customers or service. In classifying customers served or service furnished, the city or town governing body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; location of the various customers within and without the city or town; the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the water furnished; the time of its use; capital contributions made to the system including, but not limited to, assessments; and

[4]The water districts and the amicus curiae also argue that RCW 35.92.010, which is the basis of authority for the City's water rate ordinance, is unconstitutional because it permits a taking of property without due process of law in that nonresident water users have no opportunity to be heard on the question of the amount or kind of water rates to be established and, further, in that it places no burden upon the City to establish that its water rates are reasonable. *See* Const. art. 1, §§ 1, 3. The water districts present the additional argument that the water rates charged nonresidents are an unconstitutional tax or assessment in that they are not uniform when compared to resident rates and are imposed outside of the City's jurisdiction. *See* Const. art. 7, § 9. To the extent these contentions have any merit, we do not reach them because the record indicates they were not properly presented to the trial court. Further, they are not supported by pertinent citations of authority and, in view of our disposition of this appeal, are otherwise unnecessary for us to resolve.

any other matters which present a reasonable difference as a ground for distinction. No rate shall be charged that is less than the cost of the water and service to the class of customers served.

It should be recognized that the question of the reasonableness of a classification pursuant to RCW 35.92.010 relates to whether the classification is invalidly discriminatory and has no relation to the reasonableness of the amount of the water rate charged to members of a particular class. As our State Supreme Court observed in *Faxe v. Grandview*, 48 Wn.2d 342, 350, 294 P.2d 402 (1956): "The amount of rate differential between two classifications of customers has no bearing on the question of discrimination. It is relevant only on the question of reasonableness of rates, to be dealt with below."

The question presented is whether the City's classification of resident and nonresident bulk water users violates the City's duty to fix nondiscriminatory rates. The water districts contend that such duty is required by article 1, section 12 of our State Constitution.[5] This duty was described as follows in *Faxe v. Grandview, supra* at 347-48:

> The tests to be applied in determining whether the duty to fix nondiscriminatory rates has been breached are substantially the same, whether such duty is based upon the constitutional provision or common-law principles. . . . We will therefore assume, without deciding, that such a duty exists by virtue of Art. I, § 12, of the state constitution.
>
> . . .
>
> The aim and purpose of this constitutional provision is to secure equality of treatment to all persons without undue favor on the one hand or hostile discrimination on the other. Compliance with this aim and purpose requires that the legislation under examination apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within and those without a designated class.

[5] Const. art. 1, § 12 provides:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

(Citations omitted.) Moreover, in evaluating the reasonableness of a legislative classification, where it has been shown that the legislation in question uniformly applies to the members of the class, a reviewing court is limited to a determination of whether the classification was manifestly arbitrary or unreasonable. *Washington Kelpers Ass'n v. State*, 81 Wn.2d 410, 502 P.2d 1170 (1972); *Kasper v. Edmonds*, 69 Wn.2d 799, 420 P.2d 346 (1966); *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964); *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960); *Faxe v. Grandview, supra.* As our State Supreme Court stated in *Clark v. Dwyer, supra* at 435:

> Article I, § 12 of the state constitution and the fourteenth amendment to the Federal constitution, prohibiting special privileges and immunities and guaranteeing equal protection of the laws, require that class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within, and those without, a designated class. Within the limits of these restrictive rules, the [legislative body] has a wide measure of discretion, and its determination, when expressed in statutory enactment [ordinance], cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust. . . . It is universally held that courts will not look too nicely into legislative acts to determine whether a reasonable distinction exists.

(Citations omitted.)

■ In applying the foregoing principles to the facts of the instant case as reflected in the trial court's findings of fact, it is apparent, as the trial court indicated in conclusion of law No. 1, that the City did not establish an unreasonable and discriminatory classification between residents and nonresidents within the meaning of RCW 35.92.010 and the state constitution. Here, there is no contention that the water rates charged to the water districts as members of the nonresident classification are not uniform as to customers and service within that classification. Moreover, as the court observed in *Phinney Bay Water Dist. v. Bremerton*, 58 Wn.2d 298, 302, 362 P.2d 358 (1961): "When discrimina-

tion in the rates charged a particular class is claimed, the burden of proof rests upon the one who asserts it." (Citation omitted.) The trial court's findings of fact which, as we have held, are supported by substantial evidence, clearly demonstrate that the water districts have failed to sustain their burden to prove that the City breached its duty to establish a nondiscriminatory classification.

Thus, it is apparent from the findings that the City considered a number of the factors set forth in RCW 35.92.010, including "[t]he difference in cost of service to the various customers"; "location of the various customers within and without the city or town"; "the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system"; "the quantity . . . of the water furnished"; and "capital contributions made to the system," before it made the determination to create the classification distinguishing, for ratemaking purposes, between resident and nonresident bulk users of water. Moreover, the water districts failed to demonstrate that "there was no additional cost to the City in supplying nonresident bulk consumers" as compared to resident bulk consumers. Conclusion of law No. 4, in part; *see Faxe v. Grandview, supra; Phinney Bay Water Dist. v. Bremerton, supra.* Indeed, the unchallenged portion of finding of fact No. 14 states: "The water system of the City of Bellingham is a complex unified overall system serving both the City and outside users. It is probably impossible to isolate costs and benefits with precision." Finding of fact No. 14, together with finding of fact No. 15, both of which we have quoted in full previously, offer some comparison of costs and benefits in the context of capital improvements, but do not do so with reference to resident and nonresident users. Finding of fact No. 8, also quoted previously, indicates that water service to residents tends to increase the City's tax base, whereas such service to nonresidents does not. The significant feature of the trial court's findings of fact taken as a whole, however, is that there is no finding that the City

does *not* incur a greater cost in serving the nonresident water districts than it does in the case of comparable resident users. In this connection, the absence of a finding in favor of one who has the burden of proof—in this case, the water districts—amounts to a finding adverse to such party. *See Schmitt v. Matthews*, 12 Wn. App. 654, 531 P.2d 309 (1975); *Baillargeon v. Press*, 11 Wn. App. 59, 521 P.2d 746 (1974).

The water districts place substantial reliance upon *Kliks v. Dalles City*, 216 Ore. 160, 335 P.2d 366 (1959), in which the Oregon court held unreasonable and discriminatory a city water rate classification which imposed different rates for apartment houses and hotels; however, the case is factually dissimilar to the case at bar.[6] In *Kliks*, unlike the situation here, there was no showing of any difference to support the classification, in terms of location, costs, service or other factors which properly could be related to the water rates charged. Significantly, the *Kliks* court recognized that a municipal classification for ratemaking purposes is to be presumed nondiscriminatory, but correctly observed at page 178: "The differences upon which the classification is predicated must have a reasonable relationship to the purpose for which the classification is made." In the instant case, the trial court's findings of fact and conclusions of law reflect the trial court's recognition that the classification challenged by the water districts is based upon differences reasonably related to its purpose. *Faxe v. Grandview, supra;* RCW 35.92.010.

Notwithstanding certain factual distinctions between *Faxe* and this case, the basic differences between resident and nonresident users of a municipal water system substantially are equally as applicable here as they were in *Faxe*, where the court stated at page 348-49:

> After the city and its citizens had gradually developed

---

[6]The water districts also direct our attention to *Montgomery v. Greene*, 180 Ala. 322, 60 So. 900 (1913), which is equally distinguishable on its facts from this case as it was in *Faxe v. Grandview, supra* at 354.

the water system over a period of . . . years, [the] nonresidents sought and obtained permission to connect. They found the system a going concern. They were not required to assume any of the past burden or accept any future responsibility, save for providing a lateral connection and the payment of rates. While much of the system within the city is of no direct benefit to [nonresidents], they could not have obtained service had not a financially sound utility been developed.

The cost of rendering service to nonresidents is greater than to residents. . . .

The city gains an indirect benefit from rendering water service to resident users in the form of higher property valuations. No such indirect benefit is realized from service to nonresidents.

Although the water districts presented evidence through their expert witness that it costs the City less to furnish bulk water to them than it does to serve comparable resident users, and otherwise argued that there were no additional reasons for the City to impose higher water rates upon them, the trial court properly believed substantial evidence to the contrary. We hold that the trial court correctly concluded that the City had reasonable grounds to classify the water districts differently than resident bulk water users and, consequently, the City did not create an unlawful discriminatory classification for water ratemaking purposes.

■ Directing our attention to the second stage of the water districts' argument—that the water rates charged them by the City are unreasonable and arbitrary—we note again that the trial court specifically concluded: "Plaintiffs [the water districts] did not maintain the burden of proving the rates established by the City of Bellingham are not just and reasonable as to non-resident bulk consumers." Conclusion of law No. 5. As the court stated in *Faxe v. Grandview, supra* at 352:

Rates established by a municipality for utility service to inhabitants are presumptively reasonable. . . . It follows that one who challenges such rates as unreasonable has the burden of proof. . . . We see no reason

why the same principle should not apply with regard to a challenge to the reasonableness of nonresident utility rates.

(Citations omitted.) Similarly, in *Kliks v. Dalles City*, *supra*, the Oregon court stated at page 173:

The defendant city has the power to fix the rates to be charged for water which it sells. . . . In doing so it acts in a legislative capacity. . . . There is a strong presumption that the city, in exercising this function, acts within the bounds of reasonableness, and in the absence of evidence clearly establishing that the rate fixed is unreasonable, we have no power to set it aside.

(Citations omitted.) The trial court made no finding that the City's water rates as applied to the water districts are unreasonable and the absence of such a finding alone is sufficient to support the trial court's conclusion that the water districts failed to meet their burden of proof. Further, the trial court's conclusion that the City "has full authority to regulate the price of water sold provided that rates are uniform for the same class of customers or service," (Conclusion of law No. 2) merely reflects the controlling statutory language. As we have noted, RCW 35.92.010 clearly provides, in part:[7] "A city or town [has] full power

---

[7]The water districts and amicus curiae recognize that RCW 35.92.010 contains no language requiring "reasonableness" in municipal water rates. The dilemma facing nonresident water users in such a situation is described as follows in 4 R. Clark, *Water & Water Rights* § 349, at 458-60 (1970):

In the absence of statutory regulation, outsiders have turned to the courts for some protection when the rate differential between residents and nonresidents is unreasonably great. Judicial protection was indeed slow to materialize. Most courts felt that since the municipality is under no legal obligation to supply nonresidents with water, it is free to deal with them at arm's length and to fix water charges in its discretion. This view is often termed the "no duty" rule.

In 1952, the Texas court in City of Texarkana v. Wiggins, [151 Tex. 100, 246 S.W.2d 622 (1952)] broke away from this approach and adopted what is usually called the "reasonableness" rule, viz., that nonresidents are entitled to demand reasonable rates for water and that it is unreasonable per se to make the charges depend solely upon the fact that some consumers are located outside the corporate

to regulate and control the . . . price [of water from a municipal waterworks]: *Provided*, That the rates charged must be uniform for the same class of customers or service." Significantly, the proviso contained in a predecessor statute and construed in *Faxe v. Grandview*, 48 Wn.2d 342, 294 P.2d 402 (1956), stated: *"Provided, however*, That all water sold by a municipal corporation outside its corporate limits shall be sold at *just and reasonable rates."* (Italics ours.) RCW 80.40.010, Laws of 1951, ch. 252, § 1, p. 791. In 1959, subsequent to the decision in *Faxe*, the proviso was amended to read in its present language (RCW 80.40.010, Laws of 1959, ch. 90, § 6, p. 533) and, in 1965, the statute became part of Title 35 (RCW 35.92.010, Laws of 1965, ch. 7, p. 430). In short, we conclude that not only did the trial court in the case at bar properly conclude that the water districts failed to carry their burden of proving that the

limits of the municipality. The reasonableness rule has received general support in recent years and is now generally regarded as the preferable approach.

. . .
. . . The dilemma of the nonresident is that while he is entitled to reasonable rates, it is virtually impossible for him to produce the economic data necessary to attack effectively the particular rate structure.

(Footnotes omitted.)

In this connection, the amicus curiae contends that a burden must be placed upon the City to present cost data justifying the water rates it imposes upon nonresidents, but directs our attention to no judicial or legislative support for such a requirement. We note, however, that some support for the argument advanced is suggested in a "solution" offered by Professor Sax as quoted in 4 R. Clark, *Water & Water Rights, supra* at 460:

A workable solution may be found in maintaining the burden of proof of discrimination on the nonresident plaintiffs, but imposing upon the defendant cities a duty of compiling and producing the cost data for each item which is utilized in determining the rates. The suggestion here, of course, is not especially unconventional; it is merely that the defendants bear, as they do under modern discovery rules, a burden of production of the evidence in their possession. It goes beyond the bare discovery principle only in suggesting that defendants not be permitted merely to "open the files" at large, but that they be required to compile the relevant data indicating precisely how the rate differential was calculated.

water rates in question "are not just and reasonable" (Conclusion of law No. 5.), but also there is no longer any *statutory* requirement that such rates be just and reasonable. RCW 35.92.010.[8]

It is apparent from the foregoing that the water districts' claim that the City was arbitrary in determining the water rates to be charged nonresident bulk users is without merit. In *Bishop v. Houghton,* 69 Wn.2d 786, 794, 420 P.2d 368 (1966), the court characterized "arbitrary and capricious administrative action" as "willful and unreasoning action, without consideration and in disregard of facts or circumstances, and . . . where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be otherwise felt that a different conclusion might be reached." *See Helland v. King County Civil Serv. Comm'n,* 84 Wn.2d 858, 529 P.2d 1058 (1975); *Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972); *State ex rel. Carpenter v. Everett Bd. of Adjus.,* 7 Wn. App. 930, 503 P.2d 1141 (1972). The trial court's findings of fact disclose that the City set its water rates with the advice of consulting engineers in the context of the City's need for additional revenue for necessary expansion and operation of the water system. The fact that the City did not follow every recommendation of the consulting engineers is indicative of the absence of arbitrary action in that it suggests a considered

---

[8]The water districts and the amicus curiae strongly urge that the City is a "Water company" within the meaning of RCW 80.04.010 and therefore is subject to the requirement contained in RCW 80.28.010 that all charges made by a water company "shall be just, fair, reasonable and sufficient." In view of the trial court's conclusion, which we have sustained, that there has been no showing by the water districts that the rates here in question "are not just and reasonable" (Conclusion of law No. 5.), we need not reach the merits of this contention; however, we note that RCW 80.28.010 was not deemed controlling by our State Supreme Court in *Faxe, supra* at 350, and that RCW 80.04.500 excepts municipally-owned water systems from the control of rates by the utilities and transportation commission. *See State ex rel. West Side Improvement Club v. Department of Pub. Serv.,* 186 Wash. 378, 58 P.2d 350 (1936).

weighing of alternatives where there was room for more than one opinion. Finding of fact No. 16.[9] Moreover, as we have held, the water districts have made no showing of any "unreasoning action," either in the City's classification of resident and nonresident water users for ratemaking purposes or in the amount of the rates charged. Under such circumstances and in the absence of any finding by the trial judge of arbitrary action on the part of the City, we uphold the trial court's conclusion that the City did not act arbitrarily in applying its water rate ordinance to the water districts.

To recapitulate, we hold that the City has not established an unlawful discriminatory classification for water ratemaking purposes, in distinguishing between resident and nonresident bulk users of City water, because the classification is based upon differences reasonably related to the rates charged and the water districts failed to carry their burden to prove otherwise. Similarly, we hold that the water districts failed to meet their burden to prove that the water rates charged by the City are either unreasonable or arbitrary.

The judgment is affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied July 17, 1975.

Review denied by Supreme Court September 23, 1975.

---

[9]"The City set its rates in accordance with the advice of consulting engineers . . . except that it did not follow the recommendation to delete the surcharge charged to water district users. It operated under the rates then established for a period of time and found that revenues were not sufficient for the necessary expansion and operation of the system. It obtained an updated consulting engineer's report [which] suggested that the $1.50 per month per retail customer charge be deleted, and that pressure valves be installed in the system which would made the service irregular to water districts while maintaining pressure within the City. The city rejected the concept of pressure valves, retained the $1.50 per month charge, and proceeded with the capital improvements referred to [in other findings]." Finding of fact No. 16, in part.