[No. 43900.    En Banc.    November 4, 1976.]

SILVER SHORES MOBILE HOME PARK, INC., ET AL, *Respondents*, v. THE CITY OF EVERETT, *Appellant*.

*Allen J. Hendricks, City Attorney,* and *Mark T. Patterson, Assistant, Larry M. Carter* (of *Preston, Thorgrimson, Ellis, Holman & Fletcher*), and *Bruce E. Jones* (of *Sellers & Jones*), *Special Counsel,* for appellant.

' *Newton, Newton & Kight* and *R. Michael Kight,* for respondents.

WRIGHT, J.—This is an appeal by the appellant, City of Everett, from a superior court judgment holding ordinance No. 4340 void by reason of being unreasonable. The ordinance in question established rates to be charged users of the municipal sewer system in a portion of the city.

The appellant had long been furnishing sewer service to property within the city. Prior to 1960 all sewer construction had been financed by local improvement districts. Starting in 1960 the City adopted a different method of financing the sewer construction—selling revenue bonds. Customers in areas wherein sewer construction was financed by revenue bonds were charged a sum, known as a "construction charge," to cover the building of the system and a sum, known as a "service charge," to cover operation of treatment plants, maintenance, and other costs excluding construction.

The service charge was the same in all parts of the city, and it is not challenged. The question herein relates solely to the construction charge.

In 1960 there was established Bond Area I, and Bond Area II was established in 1963. In both Bond Area I and Bond Area II, the charges for construction were computed on the front footage of the property, and this has not been challenged.

Construction of a sewer system in Bond Area III started in 1968. That was an area of sparse population and much underdeveloped property. An unusually high percentage of the population in that area was in apartment complexes and mobile home courts.

Obviously, a tract of land occupied by an apartment

house or a mobile home court will contain a much higher number of living units, and, therefore, a higher number of persons per front foot of property than will a tract occupied by a single family residence. In Bond Area III the use of a sewer rate computed on front footage would have resulted in extremely high rates being charged to single family residences—up to $25 to $30 per month per single family residence.

After considerable study it was determined that water use was a fair index of sewer use. It was further determined that the average unit in an apartment house would produce 90 percent of the sewage that could be expected from an average single family dwelling unit. As a result of that calculation it was determined that each apartment unit in a multiple family dwelling complex should pay $4.50 per unit per month, and each unit in a mobile home court should pay $5 per stall per month.

Respondents instituted this action alleging the construction charge assessed against them in Bond Area III was so high as to be unreasonable and invalid. Respondents sought injunctive relief and damages in addition to recovery of all payments made into the construction fund under the terms of ordinance No. 4340. The trial court entered a judgment declaring the ordinance to be void. The City appealed to the Court of Appeals and the matter was transferred to this court.

Respondents claim, *inter alia*, that the provision of ordinance No. 4340, relating to apartment houses, which said "$4.50/ea." means $4.50 per month for the entire complex. Such a contention does accord the literal wording of the ordinance. While the literal reading of a statute or ordinance is usually controlling, such is not the case if the literal language is not in accord with the obvious legislative intent. In *Lenci v. Seattle*, 63 Wn.2d 664, 671, 388 P.2d 926 (1964), we quoted with approval from *In re Horse Heaven Irr. Dist.*, 11 Wn.2d 218, 226, 118 P.2d 972 (1941), as follows:

"It is a rule of such universal application as to need no

citation of sustaining authority that no construction should be given to a statute which leads to gross injustice or absurdity."

*See also Cory v. Nethery*, 19 Wn.2d 326, 142 P.2d 488 (1943); *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971); *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 510 P.2d 243 (1973). After careful examination of this contention of respondents, we find the obvious legislative intent must control.

Respondents' primary contention, however, deals with the claimed invalidity of ordinance No. 4340 by reason of unreasonableness and violation of equal protection.

The authority of the City of Everett in the matter of sewer rates is derived from acts of the legislature which have been codified as RCW 35.67.020, .190 and 35.92.020.

RCW 35.67.020 reads in pertinent part:

In classifying customers served or service furnished by such system of sewerage, the city or town legislative body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; the location of the various customers within and without the city or town; the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the sewage delivered and the time of its delivery; capital contributions made to the system, including but not limited to, assessments; and any other matters which present a reasonable difference as a ground for distinction.

RCW 35.67.190 reads in pertinent part:

In classifying customers served or service furnished by such system of sewerage, the city or town legislative body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; the location of the various customers within and without the city or town; the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the sewage delivered and the time of its

delivery; capital contributions made to the system, including but not limited to, assessments; and any other matters which present a reasonable difference as a ground for distinction.

RCW 35.92.020 reads in pertinent part:

In classifying customers served or service furnished by such system of sewerage, the city or town governing body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; the location of the various customers within and without the city or town; the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the sewage delivered and the time of its delivery; capital contributions made to the system, including but not limited to, assessments; and any other matters which present a reasonable difference as a ground for distinction.

It will be noted each of the sections above quoted have the same factors to be considered: (1) the difference in cost of service to the various customers; (2) the location of the various customers within and without the city or town; (3) the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; (4) the different character of the service furnished various customers; (5) the quantity and quality of the sewage delivered and the time of its delivery; (6) capital contributions made to the system, including but not limited to, assessments; and (7) any other matters which present a reasonable difference as a ground for distinction.

The formula for sewage rates in Bond Area III contained in ordinance No. 4340 is in compliance with the statute. The rate structure in Bond Area III takes into consideration particularly the quantity of sewage delivered, a factor which the statute directs to be considered. Due to the sparse population in Bond Area III, there were areas of vacant land in front of which sewers must run without any connection from those lands.

In considering the validity of ordinance No. 4340,

we must first consider the question of whether there is a proper classification of customers and areas. *Geneva Water Corp. v. Bellingham*, 12 Wn. App. 856, 532 P.2d 1156 (1975); *Faxe v. Grandview*, 48 Wn.2d 342, 294 P.2d 402 (1956).

The test is whether the City had a reasonable basis for the classification and whether the customers within the class are treated equally. *State ex rel. Bacich v. Huse*, 187 Wash. 75, 80, 59 P.2d 1101 (1936).

Respondents contend the classification is not reasonable. The City in making the classification considered factual differences between Bond Area III and other parts of the city. There was a difference in time of construction, which brought into consideration such factors as inflation. Another significant factual difference was the sparsity of population in Bond Area III. The relation between the number of occupants of single family dwellings and the number of occupants of multiple residence facilities, such as apartment houses and mobile home courts, was another factor. There were distances to run the sewer in front of unoccupied property. For the reasons stated, the customers in Bond Area III could reasonably be deemed to be in a different class from the customers in other parts of the city.

The customers within Bond Area III were treated equally in that the same schedule of rates applied to all. It is, of course, true that the rates result in different users of the sewer system paying different dollar amounts. That is, however, not the test. Each apartment house complex and each mobile home court pays in direct proportion to the number of living units according to the formula contained in the ordinance.

The rate schedule contained in ordinance No. 4340 is neither unreasonable nor does it violate the equal protection clauses of the state and federal constitutions.

From December 5, 1968, to June 30, 1973, ordinance No. 4340 was in effect. In 1973 ordinance No. 237-73, effective July 1, was passed making substantial changes in the sewer rate structure in the entire city. The rates in Bond Areas I

and II were raised to provide a subsidy for Bond Area III. The propriety of that action is not before us. In 1973 a federal grant in the sum of approximately $939,000 was received by the City of Everett. Instead of following the usual practice of applying the federal money to the entire city, it was all applied in Bond Area III, thereby substantially decreasing the bonded indebtedness of that area. The situation in 1973 was substantially different from the situation in 1968.

■ In any event, the validity of a statute or ordinance is to be judged solely by the facts in existence at the time of its passage. A legislative body is not expected to foretell the future. Therefore, it is improper to compare the rates found in ordinance No. 4340 with the rates found in ordinance No. 237-73.

■ Every presumption will be in favor of the constitutionality of an ordinance. In *Lenci v. Seattle*, 63 Wn.2d 664, 667-68, 388 P.2d 926 (1964), we said in part:

An ordinance to be void for unreasonableness must be clearly and plainly unreasonable. *Seattle v. Hurst*, 50 Wash. 424, 97 Pac. 454. The burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. *Letterman v. Tacoma*, 53 Wn. (2d) 294, 333 P. (2d) 650. Every presumption will be in favor of constitutionality. *Winkenwerder v. Yakima*, 52 Wn. (2d) 617, 328 P. (2d) 873. And, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, 111 A.L.R. 998. These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions.

*Lenci* was cited with approval in *Spokane v. Carlson*, 73 Wn.2d 76, 80, 436 P.2d 454 (1968), wherein we said in part:

An ordinance regularly enacted is presumed constitutional, and the burden of establishing the invalidity of an ordinance rests heavily upon the party challenging its constitutionality. If a state of facts justifying an ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in

conformity therewith. *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964) and cases cited therein.

In *H & B Communications Corp. v. Richland*, 79 Wn.2d 312, 316, 484 P.2d 1141 (1971), we said:

The state legislature is allowed very broad discretion in making classifications. *Boeing Co. v. State*, 74 Wn.2d 82, 442 P.2d 970 (1968). A city council has the same power to make classifications as does the state legislature. *Austin v. Seattle*, 176 Wash. 654, 30 P.2d 646, 93 A.L.R. 203 (1934).

In *Seattle v. Jones*, 79 Wn.2d 626, 628, 488 P.2d 750 (1971), we said:

When the constitutionality of an ordinance is questioned, it will be presumed constitutional. *Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522 (1967). One who challenges the constitutionality of a statute carries the burden of proving its invalidity. *State v. Primeau*, 70 Wn.2d 109, 422 P.2d 302 (1966).

Ordinance No. 4340 meets all of the tests for validity and the judgment of the trial court is, therefore, reversed.

STAFFORD, C.J., ROSELLINI, HUNTER, HAMILTON, UTTER, and BRACHTENBACH, JJ., and HENRY, J. Pro Tem., concur.