Honorable Brian Sonntag State Auditor P.O. Box 40021 Olympia, Washington 98504
Dear Mr. Sonntag:
By letter previously acknowledged, you have requested our opinion on the following question:
 Do cities and towns have authority to impose a charge on their utility customers for the maintenance and operation of street lights?
 BRIEF ANSWER
We answer this question in the negative. In the absence of express statutory authority, the maintenance and operation of street lights are not a lawful charge against the customers of a city water, sewer, electric, or transportation utility.
 BACKGROUND
Your questions are based upon a series of examples described in your request letter. The examples mention specific cities. To present the discussion on a theoretical plane and to avoid commenting on specific city ordinances, we have paraphrased the examples using hypothetical rather than actual municipalities:
 City A operates its own electrical utility, furnishing electrical power to its own residents, to the residents of neighboring Cities B and C, and to residents of surrounding unincorporated areas. Historically, City A treated the city government as its "customer" for purposes of paying for street lighting, and the utility fund billed the city's general fund to cover these costs. Recently, the city council changed its policy and stopped transferring money from the general fund to the utility fund for the cost of providing street lighting within the city. As a result, the cost of providing street lighting has become a cost of operating the electric utility, and the city's utility customers cover these costs through increased rates.
 Cities B and C have entered into franchise agreements authorizing City A to furnish electrical power to the residents of Cities B and C and to set rates to recover the associated costs. Current franchise agreements authorize and direct City A to furnish Cities B and C with street lighting and to recover the costs of doing this by billing utility customers.
 City D does not operate an electrical utility. Its street lighting and other electrical power needs are furnished by a privately-owned electrical company which bills the city for these costs. City D does operate a water and sewer utility. Recently, City D enacted an ordinance adding a surcharge of $3.00 per month to all of its water and sewer customers to reimburse the city for the costs of lighting the streets.
 ANALYSIS
Your question presents issues which have not been precisely considered by the appellate courts of this or any other state, so far as our research can determine. While it is common for cities and towns to operate utilities of various types, there are numerous cases concerning the conditions under which such utilities may be operated (and the rates and charges for doing so), and none of the cases deal with the question of whether the costs of lighting of streets may be charged to utility ratepayers. We look, therefore, to general statutes to determine what charges cities may appropriately include in their billings to utility customers.
The Legislature has granted cities authority to operate several types of utilities. The basic provisions are found in RCW 35.92:
 A city or town may construct, condemn and purchase, purchase, acquire, add to, alter, maintain and operate waterworks, within or without its limits, for the purpose of furnishing the city and its inhabitants, and any other persons, with an ample supply of water for all purposes, public and private, including water power and other power derived therefrom, with full power to regulate and control the use, distribution, and price thereof: PROVIDED, That the rates charged must be uniform for the same class of customers or service. Such waterworks may include facilities for the generation of electricity as a byproduct and such electricity may be used by the city or town or sold to an entity authorized by law to distribute electricity.
RCW 35.92.010. RCW 35.92.020 authorizes cities to acquire and operate sewerage and solid waste handling systems, plants, and sites. RCW 35.92.050
authorizes cities to acquire and operate facilities to furnish gas, electricity, and other means for lighting, heating, fuel, and power purposes. RCW 35.92.060 authorizes cities to acquire, maintain, and operate various types of transportation facilities. The basic list of permissible city utilities, then, includes water, sewer, electrical power, heating fuel, solid waste removal, and transportation.
Street lighting is not mentioned in RCW 35.92 or the other statutes as a type of "utility" a city or town might operate. First class cities are authorized "[t]o provide for lighting the streets and all public places, and for furnishing the inhabitants thereof with gas or other lights, and to erect, or otherwise acquire, and to maintain the same, or to authorize the erection and maintenance of such works as may be necessary and convenient therefor, and to regulate and control the use thereof". RCW35.22.280(15). This language stops well short of authorizing a city to charge its utility customers for the cost of lighting the streets or public places; it merely authorizes the city to provide the general service.
Another series of statutes provides authority to cities and towns to use local improvement districts for street lighting projects. RCW 35.43.040 provides:
 Whenever the public interest or convenience may require, the legislative authority of any city or town may order the whole or any part of any local improvement including but not restricted to those, or any combination thereof, listed below to be constructed, reconstructed, repaired, or renewed and . . . may order any and all work to be done necessary for completion thereof; and may levy and collect special assessments on property specially benefited thereby to pay the whole or any part of the expense thereof, viz:
. . . .
 (11) Street lighting systems together with the expense of furnishing electrical energy, maintenance, and operation[.]
The same section authorizes local improvement districts for the construction of a number of types of municipal projects and facilities, ranging from water systems to field houses, bulkheads, parks, roads, and aquatic plant control facilities. The inclusion of street lighting in the list, then, does not imply that street lighting is a utility or is an attendant cost of the operation of some other public utility.
Furthermore, street lighting cannot easily be analogized to the utilities listed above. Like such general basic municipal services as law enforcement, fire protection, and streets themselves, street lighting generally "benefits" all residents, but a citizen cannot use "less" street light, or take any action reducing the amount of street lighting "used". There is no plausible way to measure the "use" by any resident of street lighting; nor is there any way to draw a distinction between the street light "furnished" to individual citizens and the street light used by the city government itself. Thus, while street light is a general benefit, and cities are authorized to provide it, street lighting is not a utility "service" provided by the city to its customers.
While case law has not often focused on the nature of a "utility", there is authority for the proposition that a utility necessarily involves the furnishing of a measurable service to particular persons and does not include services which benefit the undifferentiated general public. In an early case upholding the City of Spokane's water rates, the state Supreme Court noted that water rates were not taxes, and the "consumer pays for a commodity which is furnished for his comfort and use". Twitchell v. Cityof Spokane, 55 Wn. 86, 89, 104 P. 150 (1909). It is difficult to conceptualize how street lighting is a "commodity" furnished to individuals for their particular comfort and use. Thus, the Twitchell
court recognized that "furnishing a commodity" to consumers for their "comfort and use" was what made the water rates something other than a "tax".
There also seems to be no support for the idea that the cost of street lighting is a necessary incidental expense to the furnishing of some other service, such as electrical power. While modern street lighting is electrical in nature, the decision to light a street is independent of the decision to provide electrical power to the homes and businesses along the street. Either could be done without the other. The cost of street lighting, then, is in no sense a necessary incidental cost of providing electrical power to the citizenry. We conclude, therefore, that street lighting, while a recognized municipal function, is not a "utility" for which the statutes authorize cities to bill their customers.
The city charges under discussion all result in charging utility customers for a city service which is not itself a "utility" authorized by law; nor is it a necessary incidental expense to the operation of a utility. The most dramatic example would be City D, in which all customers of D's water and sewer utility are charged $3.00 per month to cover the cost of street lighting. The evident purpose of this fee is simply to raise revenue to reimburse the city for a cost which, though undoubtedly very real, is not related to the provision of utility services to the public. There is no relationship between the flat fee and the actual "service" provided to any particular utility customer. Indeed, the charge in some ways resembles a tax rather than a utility charge. Cf. Covell v. City of Seattle, 127 Wn.2d 874, 905 P.2d 324(1995).See also 64 Am. Jur.2d, Public Utilities, § 137, at 664 (1972) ("Generally, municipal water rates may not be used as a substitute for taxes to defray the city's governmental expenses").
Cities A, B, and C are somewhat more complicated to analyze than D because they have not broken their "street lighting charge" out as a separate fixed monthly billing to customers. Rather, as we understand it, the costs of street lighting in the three cities is "folded in" to the other costs of operating and maintaining City A's electrical utility, and these costs are then indirectly reflected the rates charged to utility customers in all of the three cities and in any unincorporated areas served by City A. Assuming that electrical service to all these classes of customers is metered, those who consume larger amounts of electrical power pay more for the service provided than those who use less. Along with paying for the costs of delivering electrical power to their homes and businesses, together with such "overhead" as administrative costs, maintenance, lawful taxes and other business expenses, the utility customers are also paying, at that same proportional rate, for an unrelated city operation — street lighting. The purpose of imposing this charge is to raise revenue, since there is no "regulation" of street lighting, and the costs of providing it would otherwise be paid from other city funds. Nor is there any proportional relationship between the amount paid for street lighting by any individual customer and the amount of street lighting "used" or "consumed" since, as noted earlier, street lighting cannot be allocated among users in any meaningful way. Thus, although the amounts charged to utility users for street lighting in Cities A, B, and C may be "buried" in their electricity bills, the effect is just as it is in City D: The utility customers are paying for a general governmental service unrelated to the service or commodity they are purchasing from the city.
We conclude that it is inconsistent with the general municipal utility statutes to bill utility ratepayers for the cost of lighting the public streets. Street lighting is neither an authorized municipal utility in itself nor a necessary expense related to an authorized utility. Therefore, we answer your question in the negative.
We trust the foregoing will prove useful.
Very Truly Yours,
JAMES K. PHARRIS Senior Assistant Attorney General