[No. 8090. Department Two. September 29, 1909.]

## C. TWITCHELL et al., Appellants, v. THE CITY OF SPOKANE et al., Respondents.[1]

WATERS AND WATER COURSES—PUBLIC SUPPLY—WATER RATES—PROFITS—MUNICIPAL CORPORATIONS—FISCAL MANAGEMENT—SEPARATE FUNDS. A city owning its own water works has a right to fix reasonable water rates which will result in some profit, and will not be enjoined from transferring the profits on the system from the water fund to the general fund, in the absence of any statute requiring the water fund to be kept for a special purpose.

SAME—WATER RATES—TAXES. Water rates paid by consumers for city service are in no sense taxes.

SAME—FREE WATER. A city owning its water system may furnish water for municipal and charitable purposes free.

SAME—REASONABLENESS OF RATES. On the question of the reasonableness of water rates, the cost of extending water mains and depreciation may be considered.

SAME—REVIEW. City authorities have a discretion in fixing water rates which will not be reviewed unless the rate is excessive.

SAME—REASONABLENESS OF RATES. A water rate of 80 cents a month for a five-room house with bath, toilet, and lavatory, and $2.80 per year for a lawn 60x135 feet, is reasonable.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 18, 1909, after a trial on the merits before the court without a jury, dismissing an action for an injunction. Affirmed.

*William S. Lewis* and *Delbert Twitchell*, for appellants.

*L. R. Hamblen, F. D. Allen,* and *Harry Rhodes*, for respondents.

MOUNT, J.—The appellants brought this action to obtain a reduction of water rates, and to restrain alleged wrongful use of water revenues by the city of Spokane. The cause was tried to the court without a jury, and the action was dismissed. The plaintiffs appeal.

[1]Reported in 104 Pac. 150.

It appears that the city of Spokane owns and operates a water system for supplying the city and the inhabitants thereof with water for domestic purposes. The total cost and appraised value of the plant at about the time the action was begun was $2,338,749.35. Of this sum $827,154.38 has been paid from revenues derived from the water system. The balance, $1,511,591.97, was outstanding bonds and city warrants bearing interest. . The total revenue from the water system for the year 1907 was $291,775.78. The expenditures amounted to $232,248.42, leaving a net balance of about $59,000. The expenditures included $68,200 for interest on bonds and warrants, $18,000 for redemption of warrants, and $86,030.90 for extension of water mains. Water was furnished by the city to itself, and also to several charitable institutions, free of·charge. The rate charged consumers was eighty cents per month for a five-room house with bath, toilet, and lavatory, and for a lawn sixty by one hundred and thirty-five feet, $2.80 per year.

It is contended by the appellant, (1) that the transfer of certain moneys from the water fund to the general fund is illegal, and that such money should be applied to the payment of outstanding warrants against the water fund; (2) that the rates charged amount to an excessive tax on water consumers; (3) that the rates fixed are excessive; and (4) that the city has no right to sell water at a profit, or to furnish water free for municipal or charitable purposes.

The evidence shows that certain funds were transferred from the water account to the general fund. It is not clear that the funds so transferred were used for general purposes, but we assume that they were so used. We find nothing in the record to indicate that such money was required to be kept in a special fund, or that there were any outstanding overdue warrants to which it could have been applied. The matured obligations against the water fund all seem to have been met when due. When there is no requirement by statute or otherwise that money coming into the city treasury

shall be kept in a special fund and applied to a particular purpose, it is proper, of course, to place it in the general fund, and to use it for general city purposes. If we understand counsel correctly, it is not claimed that any money derived from the sale of water or from the water system, which was necessary for the maintenance and expenses of the system, was transferred to the general fund, but it is claimed that the profits of the system, after the expenses were paid, were placed in the general fund, and that this was illegal; in other words, that the city is not authorized to sell water at such a rate as to make a profit. This is the point upon which the case of the appellants depends. It is, no doubt, true that courts will prevent the illegal disposition of public moneys, and that cities furnishing water to its inhabitants may not charge more than a reasonable rate, as argued by appellants. But we think there can be no doubt that such city is authorized to make such a rate as to yield a reasonable profit. By statute, Pierce's Code, § 3643 (Laws 1905, ch. 59, § 1), it is provided that cities may own and operate water works and furnish to its citizens water, with full power to regulate and control the use, disposition, and price thereof. Section 57 of the city charter of Spokane confers the same authority. In vol. 1, Farnham, Water and Water Rights, at page 855, § 162, it is said:

"When a municipal corporation owns its own plant for the supply of water to its inhabitants, the property is held for the common benefit, and every inhabitant has a right to the benefit of it on reasonable terms. Therefore, although the municipality has a right to fix the terms by which the water will be supplied, and to establish the rates which shall be paid for it, the right must be exercised in a reasonable manner, so that the rates shall be reasonably proportionate to the service rendered. The municipality, however, is not required to limit the rate to the actual expenses of furnishing the water, but may fix a rate which will result in some profit to it, which it may use to meet its other public needs."

It is claimed that the rate charged amounts to an excessive tax on the community. But water rates are not taxes. The consumer pays for a commodity which is furnished for his comfort and use. The rule is stated in 30 Am. & Eng. Ency. Law (2d ed.), p. 422, as follows:

"Water rates paid by consumers are in no sense taxes, but are nothing more than the price paid for water as a commodity. The obligation to pay for the use of water rests either on express or implied contract on the part of the consumer to make compensation for water which he has applied for and received."

See, also, *Wagner v. Rock Island*, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519.

The right of the city to furnish water for municipal and charitable purposes free can hardly be doubted. 30 Am. & Eng. Ency. Law (2d ed.), p. 435; *Sewickley Water Works Com'rs v. Sewickley Borough*, 159 Pa. St. 194, 28 Atl. 169; *Detroit Board of Water Commissioners v. Detroit Citizens' Street R. Co.*, 131 Mich. 1, 90 N. W. 657, 91 N. W. 171. The city owns the water and controls it. If the supply is greater than the demand, there is no good reason why it should account for water used in that way. The mere fact that a profit is made from the other consumers does not necessarily show that the rate is excessive.

Appellants argue that the cost of extending water mains and depreciation should not be considered in fixing the rate to consumers. No absolute rule for fixing a rate at which water must be sold by municipalities to its citizens is cited. We think, however, that the items stated are proper to be considered; but, assuming that they are not, this would be only a circumstance tending to show that the rate was excessive. It would not necessarily be conclusive. Some reasonable discretion must abide in the officers whose duty it is to fix such rates, and unless the courts can say from all the circumstances that the rate fixed is an excessive one and disproportionate to the service rendered, the judgment of the

officers fixing the rate must stand.   The rate charged by the city seems reasonable for the service rendered.

We find no error in the record, and the judgment must therefore be affirmed.

RUDKIN, C. J., PARKER, DUNBAR, and CROW, JJ., concur.