[No. 16213.   Department Two.   January 10, 1921.]

NORTH COAST POWER COMPANY, *Appellant,* v. PUBLIC SERVICE COMMISSION OF WASHINGTON, *Respondent.*[1]

ELECTRICITY (1) — STATUTORY REGULATION — CONTRACTS WITH POWER COMPANIES—RATES—REASONABLENESS—POWER OF PUBLIC SERVICE COMMISSION—ORDER.   Under Rem. Code, §§ 8626-27, 8626-28 and 8626-34, providing for reasonable rates for electrical companies and change of the same upon hearings before the public service commission, the law contemplates that the commission may by direct order terminate contracts which were outstanding at the effective date of the law; but as to contracts entered into subsequent to the going into effect of the law, it is not necessary to first obtain the affirmative consent of the commission to the filing of a new schedule increasing the rates to meet the situation where changed conditions make the increase necessary.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered August 18, 1920, affirming the order of the public service commission as to rates to be charged by an electric company, after a hearing on the merits. Reversed.

*Lyle, Henderson & Carnahan* and *Hayden, Langhorne & Metzger,* for appellant.

*The Attorney General* (*W. V. Tanner* and *Stephen V. Carey,* of counsel), for respondent.

*McKenney & Fisk, amicus curiae.*

MITCHELL, J.—The North Coast Power Company is a public service corporation having an electric generating and transmission system extending from Kalama,

[1]Reported in 194 Pac. 587.

Cowlitz county, Washington, northerly to Tenino, Thurston county, Washington, and southerly to Woodland in Cowlitz county. It serves most of the communities within that district. The city of Centralia is one of its customers. On October 1, 1915, the power company entered into a written agreement with the city of Centralia by which it undertook, at specified rates, to furnish, for a period of five years from that date, sufficient electrical energy to supply the distributing plant owned and controlled by the city, for the use and benefit of its inhabitants generally. On November 19, 1919, the power company issued, filed and published as required by statute, its tariff to become effective, by its terms, at the expiration of thirty days' publication, December 20, 1919, which fixed the rate, for the city of Centralia, higher than that mentioned in the agreement. On January 12, 1920, the city of Centralia filed with the public service commission its complaint wherein it attacked the new rates as greatly in excess of the contract charges and alleged that the new rates were excessive, exorbitant and uncalled for.

Upon issues joined upon the complaint, the matter was heard by the public service commission. The commission found that, upon a basis for rate making, that portion of the power company's property properly apportioned to the city of Centralia equalled such an amount that the power company sustained an actual loss of 3.4 per cent in serving the city of Centralia in the year 1919, under the rates fixed in the contract, and that, by applying the rate fixed in the new tariff, the company would have made in 1919, a profit of 1.97 per cent, which is not more than a reasonable return upon the investment, and that the rates, rules and regulations in the new tariff are not unjust, unreasonable, unfair nor more than sufficient. The commission

further found the existence of the five-year contract of October 1, 1915, not yet expired, and that the rates named therein are unjust, unreasonable, unfair and insufficient, and that the company should terminate the contract; and that the new tariff should become effective on July 1, 1920. Thereupon the commission ordered that the new rates be charged to the city after July 1, 1920, and that the power company forthwith terminate the contract referred to. The commission made a further order with reference to certain collections the power company had already made from the city after December 20, 1919, which is not involved in this appeal.

Upon the making of the order by the commission, the power company took the controversy to the superior court of Thurston county by a writ of review. Upon a hearing by the superior court the order of the commission was affirmed, in so far as it held and directed that the contract rates were effective until July 1, 1920, and that the new rates should be effective only from that date. The power company has appealed from the judgment of the superior court.

The contract in question having been entered into subsequent to the going into effect of the public service commission law, the issue presented is whether the rate for the service therein provided for was superseded and avoided by the filing by the power company of a new tariff, increasing the rates, and the statutory publication thereof for thirty days prior to the expiration of the period of time mentioned in the contract, without any direction by order of the public service commission.

Section 8626-26, Rem. Code, covering the duties of electrical companies, among others therein mentioned, provides that all charges made, demanded or received by any such company for electricity, or for any service

rendered, or to be rendered in connection therewith shall be just, fair, reasonable and sufficient. That is, all things considered, the charges shall not be so low as, among other things, to deprive the company of means to render adequate service, nor so high as to unduly burden the public.

Section 8626-27 of the code provides that electrical companies, among others therein mentioned, shall file with the commission and shall print and keep open to public inspection schedules in such form as the commission shall prescribe, showing *all* rates and charges made, established or enforced, or to be charged or enforced, all forms of contract or agreement, all rules and regulations relating to rates, charges and service, used or to be used, and all general privileges and facilities granted or allowed by such company. To meet the situation where changed conditions make it necessary for the company to increase its charges, to provide means to render adequate service, § 8626-28 provides:

"Unless the commission otherwise orders, no change shall be made in any rate or charge or in any form of contract or agreement or in any rule or regulation relating to any rate, charge or service, or in any general privilege or facility which shall have been filed and published by a gas company, electrical company or water company in compliance with the requirements of the preceding section, except after thirty days' notice to the commission and publication for thirty days, which notice shall plainly state the changes proposed to be made in the schedule then in force and the time when the change will go into effect and all proposed changes shall be shown by printing, filing and publishing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection. . . . When any change is made in any rate or charge, form of contract or agreement, or any rule or regulation relating to any rate or charge

or service, or in any general privilege or facility, the effect of which is to increase any rate or charge, then in existence, attention shall be directed on the copy filed with the commission to such increase by some character immediately preceding or following the item in such schedule, such character to be in form as designated by the commission.''

Upon this subject, we said in the case of *State ex rel. Seattle v. Public Service Commission*, 76 Wash. 492, 136 Pac. 850:

"So it is apparent that the affirmative consent, of the commission to change that rate in the manner provided by § 28 was not required, though the commission had the power to suspend and adjudge such new rate unreasonable and, in that manner only, prevent it becoming effective. The provisions of § 84 lend additional support to the view that the proposed new rate of the lighting company, which was properly noticed and filed, becomes automatically effective, subject to be defeated by the commission only in the manner already indicated.''

Thus we find in §§ 27 and 28 the procedure defined for the exercise by the state of its general police power in those cases where a public service company requires additional revenue over its old charges to enable it to render proper service. But the plan is not without protection to those receiving the service, for, as provided by other sections of the law, such persons are entitled to make complaint against the increased charges while the commission of its own motion has the power to make complaint and to suspend, from time to time until the further order of the commission, the going into effect of a new schedule of rates and charges.

Unquestionably it was within the jurisdiction of, and it was the duty of, the public service commission to entertain the complaint of the city of Centralia because of its allegations that the new schedule of rates filed

and published by the power company were unfair, unreasonable and extortionate. But upon the hearing, and the findings made by the commission that the rates, rules, and regulations, named in the new tariff, were not unreasonable nor more than sufficient, there necessarily arose the question of the scope of the order to be made and entered. It was the understanding of the commission that, because of the unexpired five-year agreement between the power company and the city, the rate therein specified could not be increased, without and until there was affirmative direction by an order of the commission. The same theory seems to have been adopted by the superior court. The contention rests upon a construction entertained of § 34 of the public service commission law. That section provides:

"Nothing in this act shall be construed to prevent any gas company, electrical company or water company from continuing to furnish its product or the use of its lines, equipment or service under any contract or contracts in force at the date this act takes effect, or upon the taking effect of any schedule or schedules of rates subsequently filed with the commission, as herein provided, at the rates fixed in such contract or contracts: Provided, that the commission shall have power, in its discretion, to direct by order that such contract or contracts shall be terminated by the company party thereto, and thereupon such contract or contracts shall be terminated by such company as and when directed by such order: Provided further, that the commission shall have no power to order the termination of any contract relating to the furnishing of water for irrigation or irrigation and domestic use, where such contract is based upon a consideration passing at the time of the execution of such contract." Section 8626-34, Rem. Code.

It is argued on behalf of the respondent that § 34 embraces two kinds of contracts with reference to

point of time in connection with the terms of the law,
viz.: (1) Contracts outstanding at the effective date
of the law; and (2) contracts entered into after that
date which have not expired at the time it is proposed,
a new schedule of higher rates shall go into effect by
the filing and publication thereof. On the contrary,
we are satisfied the plain intent of the language refers
to only those contracts in force at the effective date
of the law. Manifestly, the legislature, in framing the
law, took notice of the existence of a number of out-
standing contracts made by public service companies
and adopted the policy of non-interference therewith,
with the qualification, in consonance with the reserved
authority of the state, that the commission shall have
power, in its discretion, to direct by order that such
contract or contracts shall be terminated. Accord-
ingly, to avoid any question as to the effect the enact-
ment of the law might otherwise have upon such con-
tracts, it provided in effect for a continuance of those
contracts. Then, bearing in mind the terms of § 27 of
the law providing for the filing of schedules showing
*all* rates and charges (which filing was required upon
the going into effect of the law), and the terms of § 28
of the law providing for changes in schedules by notice
to the commission and publication for thirty days, and
intending that this plan should not interfere, it was
further declared in § 34 with reference to the prevent-
ing of the operation of all contracts in force at the
date of the law, as follows: "or upon the taking effect
of any schedule or schedules of rates subsequently
filed with the commission, as herein provided, at the
rates fixed in such contract or contracts." That is, as
to all contracts existing at the date of the law, they
should not be abrogated or suspended by either the
going into effect of the law or a subsequent filing and

publication of a schedule, fixing a rate different from that named in such contract or contracts. They constitute a class of their own to be terminated only by an order within the discretion of the commission.

We conclude, therefore, that when the commission found that the rates, rules and regulations named in the new tariff filed by the power company were not unfair nor more than sufficient it should have ordered a dismissal of the complaint.

Reversed and remanded with directions to the lower court to enter a judgment, directing the public service commission to set aside its order and to enter one dismissing the complaint of the city of Centralia.

HOLCOMB, C. J., MOUNT, MAIN, and TOLMAN, JJ., concur.