ROETTINGER, A TAXPAYER, v. THE CITY OF CIN-
CINNATI ET AL.

*Municipal corporations—Waterworks—Disposition of surplus rev-
enue—Section 3959, General Code—Power over municipal
public utilities—Transfer of surplus to general fund—Sec-
tion 3799, General Code—Sections 3 and 4, Article XVIII,
Constitution.*

1. Section 3959, General Code, providing for the disposition of any surplus funds arising from the operation of the water-works and the application of taxes assessed for waterworks, is constitutional, and by virtue of that section surplus revenues derived from water rents may be used only for the purposes named in the section.

2. The plenary powers vested in municipalities by Section 4, Article XVIII of the Constitution, are limited to the acquisition, ownership and operation of public utilities.

3. Section 3799, General Code, providing for the transfer by municipalities of all or a portion of one fund to the credit of another fund, but limiting this power to funds raised by

taxation upon the real and personal property in the corporation, is a general law within the meaning of Section 3, Article XVIII of the Constitution, and operates to prevent the transfer to the general fund of a surplus fund derived from the operation of the waterworks.

(Decided March 1, 1922.)

APPEAL: Court of Appeals for Hamilton county.

*Messrs. Roettinger & Street,* for plaintiff.

*Mr. Saul Zielonka,* city solicitor, and *Mr. L. L. Forchheimer,* assistant city solicitor, for defendants.

CUSHING, J.    On December 13, 1921, the city council of Cincinnati passed ordinance No. 288-1921, authorizing and directing the director of public service to fix and assess water rates and to provide for the transfer of the surplus revenue from the waterworks fund to the general fund of the city, for the purpose of paying fixed charges and current expenses of the municipality.

On January 27, 1922, plaintiff began this action in the superior court of Cincinnati to enjoin the defendants from transferring the surplus funds derived from the operation of the waterworks to the general fund to be used in paying fixed charges and current expenses.

The petition copies certain sections of the ordinance, as follows:

"All moneys in excess of that required for the hereinbefore mentioned purposes shall be deemed a surplus, and shall be used for general municipal purposes, to-wit: fixed charges and current expenses of the municipality.    *    *    *

"The Director of Public Service shall, not later than the fifth day of each month, draw a voucher for said surplus to the city treasurer, who shall place the same to the credit of the general fund of the City of Cincinnati. * *. *

"The City Auditor and the City Treasurer are hereby authorized and directed to use and apply said surplus funds toward the payment of fixed charges and current expenses, as set forth in the semi-annual appropriation ordinance of the City of Cincinnati."

The petition further states that there are $15,-041,130.48 outstanding waterworks bonds; that there is in the sinking fund $4,030,441.70, set aside for the purpose of retiring such bonds; so that the present outstanding indebtedness on account of the construction of the waterworks is $11,011,688.78.

The petition states several conclusions of law that will not be here stated, or considered, and, after so doing, prays that the defendants be enjoined from transferring and using the funds for the purpose of paying fixed charges and the current expenses of the city.

Defendant demurred to the petition on the ground that the facts stated did not constitute a cause of action. The superior court overruled the demurrer and rendered judgment for plaintiff. The case was appealed to this court.

A consideration of the demurrer involves the question of the extent of power granted municipalities by Section 4, Article XVIII of the Constitution; and, also, whether Section 3959, General Code, is inoperative, as being in conflict with the provisions of the constitution, and, if not so inoperative, whether that section contains a prohibition against

the use of the waterworks funds for any purpose other than those stated in the section.

Plaintiff argues three grounds on which he claims the demurrer should be overruled:

1. That Section 3959, General Code, limits the use that may be made of the surplus derived from the operation of the waterworks.

This question will be considered when we come to discuss Section 4, Article XVIII of the Constitution as amended in 1912.

2. That the statutes relating to waterworks must be strictly construed, and that public utilities cannot be operated for the purpose of making a profit.

Counsel rely on the case of *Springfield Gas & Electric Co.* v. *City of Springfield,* 42 S. C. Rep., 24, decided by the supreme court of the United States, November 7, 1921, but that case is not authority for this contention. It was there held:

"The municipal corporation is allowed to go into business only on the theory that thereby the public welfare will be subserved. So far as gain is an object it is a gain to the public body and must be used for public purposes."

The statute under consideration (Section 3959, General Code) contemplates a surplus.

In the case of *Butler, a Taxpayer,* v. *Karb, Mayor,* 96 Ohio St., 472, the court speaks of the management yielding a profit to the city. The same is true in *Twitchell* v. *City of Spokane,* 55 Wash., 86, 24 L. R. A. (N. S.), 290.

In view of the general trend of authority this contention will not be further considered.

3. That the city officers by this ordinance are attempting to levy a tax.

It has been held many times that water rates are

not taxes, and we dispose of this contention by citing 30 Am. & Eng. Ency. Law (2 ed.), 422.

The city solicitor has stated his position fully and frankly. On its consideration, together with the plaintiff's contention as to Section 3959, General Code, the case will be determined.

The solicitor's inquiry: "May the council of a municipality authorize the use of surplus funds of waterworks rentals for general municipal purposes, to-wit: fixed charges and current expenses of the municipality?"

Section 4, Article XVIII of the Constitution of 1912, is:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

It will be conceded by the language of this section and the decisions of the supreme court in *Dravo-Doyle Co.* v. *Village of Orrville*, 93 Ohio St., 236; *State, ex rel. Toledo,* v. *Weiler,* 101 Ohio St., 123, and *Butler* v. *Karb, supra,* that the constitution vests in municipalities plenary power in the acquisition, construction, ownership, leasing and operation of public utilities. The language of the supreme court in the syllabus in *Butler* v. *Karb, supra,* is:

"The powers thus conferred are proprietary in their character and in the management and operation of such plant municipal officials are permitted wide discretion."

The question whether or not Section 3959, General Code, is inoperative under the provisions of the schedule of the constitution, as amended in 1912, need not be decided here. For the purposes of this discussion we shall proceed on the theory that the section is neither inoperative, nor unconstitutional.

The language of that section of the statute is:

"After paying the expenses of conducting and managing the waterworks, any surplus therefrom may be applied to the repairs, enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction or for the creation of a sinking fund for the liquidation of the debt. The amount authorized to be levied and assessed for waterworks purposes shall be applied by the council to the creation of the sinking fund for the payment of the indebtedness incurred for the construction and extension of waterworks and for no other purpose whatever."

This statute provides two methods for the payment of costs of acquiring a waterworks, (*a*) by applying the surplus, or a part thereof, to the creation of a sinking fund for the payment of such indebtedness; (*b*) by a levy of taxes for the purpose of creating a sinking fund for the payment of the indebtedness incurred for the construction and extension of waterworks. The amount raised by taxes, if any, must be applied to the payment of the indebtedness and for extensions, and for no other purpose whatever. This clearly is a limitation on the disposition of funds derived from taxation. There

is no such limitation on the funds derived from money collected from water rentals.

Section 3959, General Code, in no way limits, modifies or controls the acquisition, ownership, or operation of the waterworks. It first directs that the expense of operation and management shall be paid from water rentals collected under Section 3958, General Code. It then provides that the surplus may be applied to repairs, extensions and enlargements, and toward the creation of a sinking fund; and also gives the municipality authority to levy taxes for the purpose of paying the costs of acquiring and the cost of extension of the waterworks.

Giving this section of the statute its plain meaning there is no limitation on a municipality owning a waterworks from using the surplus funds as is proposed by this ordinance; nor does it confer authority to use such money for any other purpose. If the authority to transfer such funds exists it must be found in some provision of the constitution or code other than those under consideration.

Since the adoption of the constitution in 1912 the legislature has not had power to legislate with reference to the acquisition, ownership or operation of a public utility by a municipal corporation. It can neither grant nor deny the municipality that authority. The authority of the legislature to enact laws with reference to municipally-owned public utilities must be found in some other provision of the constitution.

Section 3959, General Code, passed prior to the adoption of the Constitution of 1912, has to do with funds derived from the management of the waterworks, and those raised from taxes. The first pro-

vision is with reference to the surplus accumulated from the operation of the plant, and the other is with reference to the money raised by taxation for the payment of debts contracted in the construction and for the extension of the waterworks. The legislature has power over taxation, and money derived from taxes is within legislative control, so that the second part of the act comes clearly within the power of the legislature.

The most that can be said for the first part of the section, when construed in connection with the constitutional provision, is that it is a permissive act. It reads:

"After paying the expenses of conducting and managing the waterworks, any surplus therefrom may be applied to the repairs, enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction or for the creation of a sinking fund for the liquidation of the debt."

It is contended that the word "may" means and should be read "must." This construction of the statute is applicable only when the legislature means to impose a positive and absolute duty on the municipality. Such construction cannot be resorted to when the most that can be said for the act is that the city is vested with a discretion to create a surplus and to dispose of it. In this connection it should be pointed out that the rule *expressio unius est exclusio alterius* is not applicable to permissive statutes. It is to be applied when there is a grant of power, or a direction to do a particular thing. In such case, the statute must be strictly construed, and the statement of the powers granted or the duty

to be performed excludes all others under the maxim.

In *Baker* v. *Cincinnati,* 11 Ohio St., 534, Judge Gholson, delivering the opinion of the court, says, at page 541:

"The rule *expressio unius est exclusio alterius,* has no application to such a case; unless a mandate to do one of several things, completely and perfectly, can be regarded as a prohibition against doing the others in any manner."

The case as presented would seem to be as follows:

That the plenary powers vested by the constitution in a municipality are limited to the acquisition, ownership and operation of the waterworks; that Section 3959, General Code, is not unconstitutional, nor is it inoperative on account of being in conflict with any provision of the constitution; that the first part of the section is permissive only, and the rule of construction, *expressio unius est exclusio alterius,* is not applicable; and that the section is divisible, the part relating to taxes being mandatory, and strictly construed, the part relating to the discretion vested in the municipality being permissive only.

Conceding all of the foregoing to be true, we are unable to understand by what authority the city can transfer the surplus from the waterworks fund to the general fund.

Section 3799, General Code, specifies what funds may be transferred and the method by which the transfer shall be accomplished, and adds, "but there shall be no such transfer except among funds raised by taxation upon all the real and personal property in the corporation, nor until the object of

the fund from which the transfer is to be effected has been accomplished or abandoned.''

Section 3, Article XVIII of the Constitution, conferring home rule, provides:

''Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.''

The statute relating to the transfer of funds is a general law. Therefore Section 3799, General Code, will not permit council to make the transfer contemplated by the ordinance.

*Demurrer overruled, and permanent injunction allowed.*

HAMILTON, P. J., and BUCHWALTER, J., concur.