IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WEST TERRACE GOLF LLC, a Washington limited liability company, | ) ) ) | No. 38792-5-III |
| Petitioner, | ) ) | |
| v. | ) ) | |
| CITY OF SPOKANE, a municipal corporation in and for the State of Washington, | ) ) ) ) ) | |
| Respondent. | ) ) | |
| JOHN E. DURGAN, individually and as class representative for all others similarly situated; TA WNDI L. SARGENT, individually and as class representative for all others similarly situated; and KRISTOPHER J. KALLEM, individually and as class representative for all other similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Petitioners, | ) ) | |
| v. | ) ) | |
| CITY OF SPOKANE, a municipal corporation in and for the State of Washington, | ) ) ) ) ) | |
| Respondent. | ) | |

BIRK, J.* — This case presents the question whether the rates established

by a municipal water supplier are subject to RCW 80.28.010, .090, and .100,

* The Honorable Ian S. Birk is a Court of Appeals, Division One, judge
sitting in Division Three pursuant to CAR 21(a).

No. 38792-5-III
*W. Terrace Golf v. City of Spokane*

which among other things require that utility rates be "*just, fair, reasonable and sufficient*." RCW 80.28.010(1) (emphasis added). The petitioners, customers of the City of Spokane's (City) municipal water system residing outside the city and bringing claims based on these provisions, point to a statutory definition specifying the utilities subject to RCW 80.28.010, .090, and .100 that expressly includes municipal water suppliers. RCW 80.04.010(30)(a).

The City says another statute, RCW 35.92.010, regulates municipal water rates to the exclusion of RCW 80.28.010, .090, and .100. RCW 35.92.010 once included a requirement that municipal water rates be "*just and reasonable*," but the legislature eliminated that requirement by amendment in 1959. Compare LAWS OF 1951, ch. 252, § 1 (emphasis added), with LAWS OF 1959, ch. 90, § 6. The City says this shows the legislature's intent not to impose a statutory reasonableness requirement on municipal water suppliers. The City points to Geneva Water Corp. v. City of Bellingham, which, noting the 1959 amendment, said of municipal water rates "there is no longer any statutory requirement that such rates be *just and reasonable*." 12 Wn. App. 856, 869-70, 532 P.2d 1156 (1975) (emphasis added). With *that* standard removed from the code in 1959, that much plainly was true. But Geneva expressly declined to decide whether the rule

2

of RCW 80.28.010 that rates be " '*just, fair, reasonable and sufficient*' " applied to municipal water suppliers.  Id. at 870 n.8 (emphasis added).

Presented with this precise question for the first time, we conclude that RCW 80.28.010, .090, and .100 apply to municipal water suppliers.  We reach this conclusion for two reasons.  First, when the entire history of the two sets of statutes is examined, it is clear that when the legislature first enacted what are now RCW 80.28.010, .090, and .100, it intended that they apply to municipal water suppliers.  Second—although for a brief eight year period in the 1950s, RCW 35.92.010 included a requirement that municipal water rates be "just and reasonable"—both then and as it has stood since 1959, the statute does not irreconcilably conflict with the requirements of RCW 80.28.010, .090, and .100.  This case is therefore controlled by the principle that when " 'apparently conflicting statutes' " may be reconciled, the court will " 'give effect to each of them.' "  Gorman v. Garlock, Inc., 155 Wn.2d 198, 210, 118 P.3d 311 (2005) (quoting Tunstall v. Bergeson, 141 Wn.2d 201, 211, 5 P.3d 691 (2000)).

FACTS

Petitioners reside outside the City and use water purchased from the City. The water users sued the City, requesting in part a declaratory ruling that the

City's higher water rates for nonresident users were unlawful under various provisions of chapter 80.28 RCW.

The City sought a declaratory ruling that RCW 35.92.010, not Title 80 RCW, governs a municipality's setting of its water rates. The water users sought their own declaratory ruling that RCW 80.28.010, .090, and .100 also govern a municipality's setting of its water rates. Agreeing with the City, the trial court ruled, "Title 80 is not controlling or applicable to water rates." The trial court entered a written order providing,

> RCW 35.92.010 and the Spokane Municipal Code, within the confines of the Washington State Constitution, are controlling and govern the City's authority to establish the municipal water rates at issue in these proceedings. Title 80 RCW, including but not limited to RCW 80.28.010, .090, and .100, do not apply.

It certified its order for interlocutory review.

The water users sought direct review in the Supreme Court, which denied direct review and transferred the consolidated case to this court. We accepted discretionary review under RAP 2.3(b)(4).

## ANALYSIS

The petitioners contend the trial court erred in declaring that RCW 80.28.010, .090, and .100 do not apply to a municipality's setting of its water

No. 38792-5-III
*W. Terrace Golf v. City of Spokane*

rates. We agree.

Under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, courts have the power to "declare rights, status and other legal relations whether or not further relief is or could be claimed." RCW 7.24.010. On review of a declaratory ruling, we review conclusions of law involving the interpretation of statutes and municipal ordinances de novo. Nollette v. Christianson, 115 Wn.2d 594, 600, 800 P.2d 359 (1990). "In cases where the question is whether one statute has been impliedly repealed or overruled by another related statute," the Supreme Court "has explained the legislative history of the statutory scheme and applied the relevant rules of construction without first engaging in a plain language analysis." Anderson v. Dep't of Corr., 159 Wn.2d 849, 859 n.6, 154 P.3d 220 (2007) (citing Hallauer v. Spectrum Props., Inc., 143 Wn.2d 126, 146-47, 18 P.3d 540 (2001)). We proceed in like fashion.

STATUTORY BACKGROUND

The statute on which the City relies, RCW 35.92.010, was enacted in 1890 in Washington's first legislative session, four months after statehood. In Laws of 1889-90, § 1, at 520, the legislature authorized cities and towns to construct water

5

works, providing that

> any incorporated city or town within the state be and is hereby
> authorized to construct, or condemn and purchase, or purchase or
> add to and maintain, water works within or without the city limits for
> the purpose of furnishing the city and the inhabitants thereof with an
> ample supply of water for all purposes.

This statute is the "general grant of authority to cities and towns to acquire, operate and maintain municipal waterworks." Scott Paper Co. v. City of Anacortes, 90 Wn.2d 19, 28, 578 P.2d 1292 (1978). In addition to other amendments over time, in 1897 the legislature added that the authorization to construct water works came "with full power to regulate and control the use, distribution and price thereof." LAWS OF 1897, ch. 112, § 1, at 326. In 1899, the legislature added that a city or town might construct water works not only for the "inhabitants thereof" but also "any other persons." LAWS OF 1899, ch. 128, § 1, at 250-51.

In Twitchell v. City of Spokane, 55 Wash. 86, 88, 104 P. 150 (1909), the court held that a municipality's "full power" under the statute to set rates was nevertheless not without constraint. The court explained, as a matter of common law, " 'although the municipality has a right to fix the terms by which the water will be supplied, and to establish the rates that shall be paid for it, the right must

6

be exercised in a reasonable manner, so that the rates shall be reasonably proportionate to the service rendered.' " Id. (quoting 1 HENRY PHILIP FARNHAM, THE LAW OF WATERS AND WATER RIGHTS, § 162, at 855 (1904)). The court rejected the ratepayers' argument that the municipality could not charge a rate above cost, resulting in "some profit." Id. The court limited the requirement of reasonable rates by the rule that, "[s]ome reasonable discretion must abide in the officers whose duty it is to fix such rates, and, unless the courts can say from all the circumstances that the rate fixed is an excessive one and disproportionate to the service rendered, the judgment of the officers fixing the rate must stand." Id. at 89-90.

In 1911, the legislature enacted what are now RCW 80.28.010, .090, and .100, relied on by the petitioners. These provisions, along with the definition of " '[w]ater company' " in RCW 80.04.010(30)(a), date to the 1911 Public Service Commission law (PSC law). See LAWS OF 1911, ch. 117, §§ 1, 8. In provisions remaining materially unchanged today, the PSC law required that "[a]ll charges made, demanded or received by any . . . water company for . . . water, or for any service rendered or to be rendered in connection therewith, shall be *just, fair, reasonable and sufficient*." RCW 80.28.010(1) (emphasis added). In addition to

7

imposing this statutory standard on rates, the PSC law included prohibitions on unreasonable preferences and rate discrimination. Under RCW 80.28.090 no water company may "make or grant any undue or unreasonable preference or advantage," or "subject" any person "to any undue or unreasonable prejudice or disadvantage." And, under RCW 80.28.100, no water company may "directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive" from any person "a greater or less compensation" than it charges, demands, collects or receives from any other person "for doing a like or contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions." The PSC law created a statutory damages claim on which petitioners rely. RCW 80.04.440.

The PSC law expressly applied to municipal water suppliers. In a definition materially unchanged from the 1911 enactment, for purposes of Title 80 RCW today, a " '[w]ater company' " includes "every city or town owning, controlling, operating, or managing any water system for hire within this state." RCW 80.04.010(30)(a). At the same time, the PSC law exempted municipal water suppliers from some its regulatory scope. The PSC law generally regulated " 'public service compan[ies],' " defined as "every common carrier, gas company,

electrical company, water company, telephone company, telegraph company, wharfinger and warehouseman" as individually defined in the law. LAWS OF 1911, ch. 117, § 8, at 545. The law created the Washington Public Service Commission, and gave it regulatory powers to adopt rules and regulations, subpoena witnesses and records, require reports, conduct hearings on complaints, and review proposed rate increases, among other powers.[1] LAWS OF 1911, ch. 117, §§ 2, 75, 78, 82, 85. However, the law provided, in language that is in force today, that, as to municipal utilities, the commission would not have authority to "make or enforce any order," but "all other provisions enumerated herein" would apply. RCW 80.04.500.

In 1917, the legislature passed a law, now codified as RCW 35.92.170, different from the statutory authorization for cities and towns to construct water works. The 1917 law expressly allowed cities and towns to extend utilities beyond their corporate limits, but it subjected service outside corporate limits to the regulation of the Public Service Commission. LAWS OF 1917, ch. 12, § 1. In 1933, the legislature passed a new law, now codified as RCW 35.92.200, again different from the statutory authorization for water works, empowering cities and

---

[1] The 1911 Public Service Commission assumed the authority of the "Railroad Commission." LAWS OF 1911, ch. 117, § 107. The Railroad Commission had been established in 1905. LAWS OF 1905, ch. 81, § 1.

towns to contract with others for furnishing water and fixing rates. LAWS OF 1933, 1st Ex. Sess., ch. 17, § 3. In State ex rel. West Side Improvement Club v. Department of Public Service, 186 Wash. 378, 382-83, 58 P.2d 350 (1936), the court concluded these two enactments conflicted. Because the 1917 law gave the commission "the power to fix the prices of the service outside the city," but the 1933 law gave municipalities the right to do so by contract, the court said there was an "irreconcilable conflict" between the two acts and held the later 1933 law controlled. Id.; LAWS OF 1933, 1st Ex. Sess., ch. 17, § 3. Thus, from 1917 until 1933, municipal water suppliers were subject to regulation by the commission for service provided outside their corporate limits. But neither the 1917 enactment nor the 1933 enactment discussed in West Side Improvement Club amended the 1890 law that is now RCW 35.92.010.[2]

In 1951, the legislature for the first time added a substantive requirement for rates to the 1890 authorization to construct water works. LAWS OF 1951, ch. 252, § 1. By then, the 1890 law was codified at former RCW 80.40.010. See id.

---

[2] These two laws remain codified as RCW 35.92.170 and RCW 35.92.200, and, as modified in West Side Imp. Club, remain in force today. Neither party cites current RCW 35.92.170 or RCW 35.92.200 or asserts either has any bearing on the court's analysis.

The 1951 amendment added a proviso requiring that "all water sold by a municipal corporation outside its corporate limits shall be sold at *just and reasonable* rates." Id. (emphasis added).

The Supreme Court interpreted the "just and reasonable" standard in the 1951 amendment in Faxe v. City of Grandview, 48 Wn.2d 342, 347, 294 P.2d 402 (1956). Two customers challenged a Grandview city ordinance increasing rates outside city limits. Id. at 344. The court first addressed whether the city had violated the duty to set nondiscriminatory rates. Id. at 347. The court assumed without deciding that the privileges and immunities clause of the Washington constitution, article I, section 12 required nondiscriminatory rates, because the test was "substantially the same" under "common-law principles." Id. at 347-48. The court said the rule required that legislation apply "alike to all persons within a class," and required a "reasonable ground" for distinguishing those within and those without a class. Id. at 348. The court listed several distinctions between those residing inside and outside Grandview's city limits in regard to financial contribution to the water system, and construction and operation of the system. Id. at 348-49. These and other factors afforded "reasonable ground for establishing,

11

for rate-making purposes, a separate class consisting of nonresident water users."
Id. at 350.

But the court drew a distinction between whether justification existed for making a legislative classification, and whether the price charged a given class was reasonable. The court explained, "The amount of rate differential between two classifications of customers has no bearing on the question of discrimination." Id. The court then turned to whether the ordinance violated the statutory standard of the 1951 amendment. The court said it had not had occasion to construe the " 'just and reasonable' " standard, but said it had construed "a somewhat similar" term, namely the standard of the PSC law that rates be " 'just, fair, reasonable, and sufficient.' " Id. (quoting RCW 80.28.010). This standard requires that rates "shall not be so low as, among other things, to deprive the company of means to render adequate service, nor so high as to unduly burden the public." Id. at 350-51 (citing N. Coast Power Co. v. Pub. Serv. Comm'n, 114 Wash. 102, 105, 194 P. 587 (1921)). The court held the standard of " 'just and reasonable' " required the city to meet the same duty to *nonresident* customers that it owed as a matter of common law to its *resident* customers "irrespective of statute." Id. at 351. Like the standard of the PSC law, this required that " '[f]rom the standpoint of the

public,' " the value of the services was not to be exceeded, and " '[a]s to the corporation rendering the services,' " the rate must give " 'a fair compensation for the service rendered.' " Id. (quoting 3 JOHN F. DILLON, COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS, 2265, § 1330 (5th ed. 1911)).

The court qualified this by explaining that "some reasonable discretion must abide in the officers whose duty it is to fix rates," and therefore rates are "presumptively reasonable" unless the challenger can show a rate "is an excessive one and disproportionate to the service rendered." Id. at 352. The court then discussed several factors bearing on the reasons Grandview charged higher rates to nonresident customers. Id. at 352-53. Ultimately, however, the court held the challengers failed to meet their burden of proof because they produced "no evidence" of "the value of the service to themselves" or "the return being received by the city on the investment devoted to nonresident service." Id. at 353.

The "just and reasonable" standard discussed in Faxe was short lived. Following its original enactment in 1951 and interpretation in Faxe in 1956, in 1959 the legislature amended former RCW 80.40.010, eliminating the "just and reasonable" standard. LAWS OF 1959, ch. 90, § 6. Besides eliminating that language, the 1959 amendment added to the 1890 authorization a new, extensive

13

proviso.  Id.  It required uniform rates for the same class of customers or service,

and listed factors a municipality "may in its discretion consider" in classifying

customers or service, one of which is the location of customers inside or outside

the municipality's corporate limits.  Id.  Since the addition of the 1959 proviso,

RCW 35.92.010 has set forth a list of factors bearing on rate classifications, and

today states in relevant part,

> PROVIDED, That the rates charged must be uniform for the same class of customers or service. . . .
> In classifying customers served or service furnished, the city or town governing body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; location of the various customers within and without the city or town; the difference in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the water furnished; the time of its use; the achievement of water conservation goals and the discouragement of wasteful water use practices[3]; capital contributions made to the system including, but not limited to, assessments; and any other matters which present a reasonable difference as a ground for distinction.  No rate shall be charged that is less than the cost of the water and service to the class of customers served.

---

[3] The reference to "the achievement of water conservation goals and the discouragement of wasteful water use practices" was added in 1991.  LAWS OF 1991, ch. 347, § 18.

14

The City says the 1959 amendment is inconsistent with the provisions of the 1911 PSC law and exempts city water rates from the application of RCW 80.28.010, .090, and .100. The City does not directly dispute its falling within the PSC law's statutory definition of a " '[w]ater company' " in RCW 80.04.010(30)(a), but argues it does not therefore become subject to "any and all provisions of Title 80 RCW."

No relevant changes have occurred in the statutory provisions at issue since the 1959 amendment. We note, however, that in the 1960s, all the provisions were recodified. By 1961, efforts by the code reviser's office to restore session law language to the code had revealed that "because of the complicated statutory problems and history" relating to public utilities regulated in Title 80 RCW and transportation regulated in Title 81 RCW, "the titles in question are nonrestorable." LAWS OF 1961, ch. 14, general explanatory note, at 889. This was attributed to past codification of the PSC law in multiple titles in the Revised Code of Washington, with subsequent amendments "by reference to only one of the titles," or amendments to both titles "for different substantive reasons" leading to divergent statutory language. Id. at 890. The then current Public Service Commission acted pursuant to devolutions of powers and duties in 1921, 1935,

15

1945, 1949, 1951, and 1955.[4] Id. at. 891.  The purpose of the 1961 act was "the repeal and reenactment of these titles, for the purpose of resolving as many of the aforesaid problems as may be ascertained and remedied without affecting the substance of the law."  Id. at 890.  As a result, in 1961 the legislature repealed the 1911 PSC law in its entirety.  LAWS OF 1961, ch. 14, § 80.98.040(8).  However, it expressly disclaimed that doing so was a reenactment.  Rather, the provisions "insofar as they are substantially the same as statutory provisions repealed by this chapter, and relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments."  RCW 80.98.010.

At the same time, the 1961 act contemplated moving three chapters then in Title 80 RCW that address "municipal utilities and are not administered by the Public Service Commission."  LAWS OF 1961, ch. 14, general explanatory note at 890.  These chapters were to be recodified in Title 35 RCW "upon the enactment hereof" in accordance with "the placement of these sections in codifications prior to [Revised Code of Washington]."  Id.  One of the chapters to be moved was the chapter containing the 1890 authorization to construct water works, former chapter

---

[4] The commission is now known as the Washington Utilities and Transportation Commission.  The commission's website states that it became known as such in 1961.

16

80.40 RCW. Id. The planned recodification of former RCW 80.40.010 into Title

35 RCW occurred in 1965. LAWS OF 1965, ch. 7, § 35.92.010. Conforming to the

plan described in the explanatory note with the 1961 recodification of the PSC

law, the legislature repealed the 1959 amendment in its entirety, LAWS OF 1965,

ch. 7, § 35.98.040(44), but provided the recodified provisions were to be construed

as "restatements and continuations, and not as new enactments." LAWS OF 1965,

ch. 7, § 35.98.010. The 1960s recodifications of both the 1911 PSC law and the

1959 amendment to the 1890 law therefore have no impact on our analysis.

LEGISLATIVE INTENT THAT RCW 80.28.010, .090, AND .100 APPLY

The foregoing history shows that the 1911 PSC law originally intended to

subject municipal utilities to the requirement that rates be "*just, fair, reasonable

and sufficient*." RCW 80.28.010(1) (emphasis added). The definition of a water

company for purposes of the PSC law still set forth in RCW 80.04.010(30)(a)

plainly included a municipal supplier. The Supreme Court read the statute to

plainly so provide in Fisk v. City of Kirkland, 164 Wn.2d 891, 894-95, 194 P.3d

984 (2008).[5] Moreover, the statutory exemption of municipal suppliers from,

_____

[5] Although Fisk holds that municipal water suppliers fall within the
definition of RCW 80.04.010(30)(a), it is otherwise not relevant. In Fisk, after
concluding the City of Kirkland fell within the Title 80 RCW definition of a water

originally, the Public Service Commission and, now, the Washington Utilities and Transportation Commission, always has been a partial exemption, stating explicitly that except as exempted from commission orders, "all other provisions enumerated herein" apply. RCW 80.04.500. When the PSC law expressly included municipal utilities in its scope and granted them a partial exemption from the law specifying that "all other provisions" applied, the legislature could not have put it any more plainly that the law applied to municipal utilities. Any other interpretation of the PSC law would improperly render " 'meaningless' " and " 'superfluous' " the statutory definition expressly covering municipal water suppliers and the statement that, except as exempted, the provisions of the law apply. Gorman, 155 Wn.2d at 210 (internal quotation marks omitted) (quoting Davis v. Dep't of Licensing, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)).

The fact RCW 35.92.010 grants cities and towns "full power to regulate and control the . . . price" of water services does not overcome the legislature's subsequent enactment of the rule that rates be "just, fair, reasonable and sufficient." RCW 80.28.010(1). First, as explained above, the "full power"

---

company, the court held the city did not have a duty under RCW 80.28.010(2) to supply water pressure to a fire hydrant adequate to more quickly extinguish a fire consuming the Fisks' recreational vehicle. 164 Wn.2d at 895-96.

18

language was enacted in 1897, so the 1911 PSC law is the later, more specific enactment that would control in the event of conflict. Gorman, 155 Wn.2d at 210-11. Second, as explained in Twitchell, even before the 1911 PSC law, the "full power" language never gave cities and towns the authority to set rates unconstrained by the common law rule that they be reasonable. 55 Wash. at 88.

Another reason the "full power" language does not avoid application of the PSC law is found in the fact the 1911 PSC law governs the rates cities and towns may set for *electric* utilities. This touches a point of dispute, because the petitioners say that the same rules apply to water rates, whereas the City, pointing to RCW 35.92.010, argues that water rates are subject to statutory provisions different from those governing electric rates. The only difference, however, comes from the 1951 and 1959 amendments. The same 1897 law that gave cities and towns "full power" over water rates gave them "full authority" over electric rates. LAWS OF 1897, ch. 112, § 1. This remains the law today, RCW 35.92.050, but it is equally settled this authority is subject to the rule of the 1911 PSC law that electric rates be " 'just, fair, reasonable and sufficient.' " Okeson v. City of Seattle, 130 Wn. App. 814, 824, 125 P.3d 172 (2005) (quoting RCW 80.28.010); accord Hearde v. City of Seattle, 26 Wn. App. 219, 221, 611 P.2d 1375 (1980).

19

There is a legitimate question about whether water rates are subject to the requirements of the PSC law *following* the 1951 and 1959 amendments to RCW 35.92.010, but there cannot have been one before those amendments distinguished the law of municipal water rates from that of municipal electric rates. The 1911 PSC law, and therefore RCW 80.28.010, .090, and .100, were originally intended to, and did, apply to municipal water rates.

### THE STATUTES MAY BE RECONCILED

Following the 1959 amendment, RCW 35.92.010 in its present form regulates rate classifications. It states in relevant part that "the rates charged must be uniform for the same class of customers or service." RCW 35.92.010. This is consistent with the requirement of RCW 80.28.010(1) that that uniform rate "shall be just, fair, reasonable and sufficient." The only provision of the 1959 amendment to RCW 35.92.010 concerning the amount of the rate a supplier may charge says, "No rate shall be charged that is less than the cost of the water and service to the class of customers served." This also is consistent with RCW 80.28.010(1)'s requirement that rates be "sufficient." As the Supreme Court has explained the RCW 80.28.010(1) standard, it forbids rates from either being "so

20

high as to unduly burden the public" or "so low as . . . to deprive the company of means to render adequate service." Faxe, 48 Wn.2d at 350-51.

The 1959 amendment to RCW 35.92.010 today lists nine factors that a municipal water supplier "may in its discretion consider" in "classifying customers served or service furnished." This does not require that municipal water suppliers adopt any classification, or consider any particular factor. The last factor is an omnibus clause: "any other matters which present *a reasonable difference as a ground for distinction*." RCW 35.92.010 (emphasis added). Such an omnibus clause is appropriately interpreted as marking the "common attribute" that "connects the specific items" listed. Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 225, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008). The 1959 amendment permits consideration of the "location of the various customers within and without the city or town." This reflects a legislative determination that this *is* "a reasonable difference" that may be considered in making a "ground for distinction." RCW 35.92.010. But nothing suggests the 1959 amendment meant to permit cities or towns to base a rate classification on this or another factor in the *absence* of its being, in fact, a reasonable "ground for distinction."

The 1959 amendment is consistent with the PSC law's prohibitions on unreasonable preferences and rate discrimination RCW 80.28.090 and .100. The unreasonable preferences prohibition, RCW 80.28.090, prohibits only "*undue* or *unreasonable*" rate preferences. RCW 80.28.090 (emphasis added). Likewise, the prohibition on rate discrimination in RCW 80.28.100 bars a utility from collecting from one person "a greater or less compensation" than it receives "from any other person," but only "for doing a like or contemporaneous service . . . under the same or substantially similar circumstances or conditions." If a municipal water supplier's rate classification is based on matters presenting "a reasonable difference as a ground for distinction" under RCW 35.92.010, it will not give any ratepayer an advantage that is "undue" or "unreasonable" under RCW 80.28.090, or lead to a greater or less compensation for service made under "similar" conditions under RCW 80.28.100.

Geneva further shows that RCW 35.92.010 in its current form regulates *classifications*, in contrast to RCW 80.28.010, .090, and .100, which regulate *rates*. In Geneva, three water districts outside the city limits of the City of Bellingham challenged the rates it charged them. Id. at 857. The trial court found the city had "reasonable grounds" for establishing a separate rate class for the

nonresident bulk users, and "breached no duty to fix nondiscriminatory rates." Id. at 861. We looked to RCW 35.92.010 for authority supporting the city's rate classification. Id. at 862. Based on evidence showing "reasonable grounds" to classify the challengers differently from in-city users, we affirmed the trial court's conclusion the city had not created an unlawful discriminatory classification. Id. at 863. To this extent, we simply applied RCW 35.92.010 to the classification as established in the trial evidence.

The trial court in Geneva also found the challengers did not show the city's rates were not "just and reasonable." Id. at 861. Following Faxe, we distinguished the imposition of a classification from a review of the reasonableness of the rates. Id. at 863. We said, "[T]he question of the reasonableness of a classification pursuant to RCW 35.92.010 relates to whether the classification is invalidly discriminatory *and has no relation to the reasonableness of the amount of the water rate charged to members of a particular class*." Id. (emphasis added). We held that the absence of a finding the rates were unreasonable amounted to a finding against the challengers' burden of proof, and was sufficient to support the trial court's conclusion the challengers had not shown the rates were not just and reasonable. Id. at 868. Because current

23

RCW 35.92.010 concerns only rate *classifications*, it does not pose a bar to

application of the RCW 80.28.010(1) standard for the *reasonableness* of particular

rates.

The City's argument that the two statutory schemes conflict ultimately rests

on the fact that in 1951, the legislature *added* a requirement to RCW 35.92.010

that rates be "just and reasonable," and in 1959 *removed* it. During those eight

years, the statutes established two standards, which Faxe admittedly referred to as

alternative ones. At the same time, Faxe did not construe them as conflicting. To

the contrary, to construe the meaning of the 1951 "just and reasonable" standard,

the court adopted its historical interpretation of the PSC law's requirement that

rates be "just, fair, reasonable and sufficient." RCW 80.28.010(1).

From this brief period of overlapping standards, Washington decisions have

occasionally referred to there being different statutory regimes for water and other

municipal utilities. In Geneva, we commented that RCW 80.28.010 "was not

deemed controlling" by the Supreme Court in Faxe, and that RCW 80.04.500

"exempts municipally-owned water systems from the control of rates by the

utilities and transportation commission." 12 Wn. App. at 870 n.8. But no party in

Faxe argued that RCW 80.28.010 applied, and the same statute that exempts

24

municipalities from the control of the Utilities and Transportation Commission also says that the provisions of the PSC law nevertheless otherwise apply. Other cases referring to statutory standards governing water and electric rates do so to highlight that there are statutes governing rates, without defining the specific statutory requirements. Earle M. Jorgensen Co. v. City of Seattle, 99 Wn.2d 861, 870, 665 P.2d 1328 (1983); King County Water Dist. No. 54 v. King County Boundary Rev. Bd., 87 Wn.2d 536, 546, 554 P.2d 1060 (1976).

Repeal by implication is strongly disfavored. State v. Peterson, 198 Wn.2d 643, 647, 498 P.3d 937 (2021). "This disfavor is the result of a presumption that the Legislature acts with a knowledge of former related statutes and would have expressed its intention to repeal them." Loc. No. 497, Affil. with Int'l Bhd. of Elec. Workers, AFL-CIO v. Pub. Util. Dist. No. 2 of Grant County, 103 Wn.2d 786, 790, 698 P.2d 1056 (1985). A repeal by implication will be found only where (1) a "later act covers the entire field of the earlier one, is complete in itself, and is intended to supersede prior legislation" or (2) "the two acts cannot be reconciled and both given effect by a fair and reasonable construction." State v. Conte, 159 Wn.2d 797, 815, 154 P.3d 194 (2007).

Neither test is met. Recognizing the weight of history over which there has been a legal reasonableness requirement, the City does not contend that RCW 35.92.010 by itself "covers the entire field" of municipal water rates. Rather, the City argues the regulation of its rates must come at least from both RCW 35.92.010 and the state constitution. Likewise, nothing signals intent by the legislature to recede from the PSC law for municipal water suppliers, but no other class of private or public utility. Starting with Twitchell in 1909 and the legislature's comprehensive and enduring legislation in the PSC law two years later, Washington has long mandated reasonableness in utility rates. It would be a dramatic break with history and with logic to say that the 1959 amendment to RCW 35.92.010 concealed an unstated legislative intent to remove any statutory reasonableness requirement from municipal water utilities *alone* of the private and public utilities all otherwise covered by the PSC law.

## CONCLUSION

Because the statutory requirements are reconcilable, we give effect to both. Under RCW 35.92.010, a municipal water supplier must charge a uniform rate for a given, statutorily permissible classification of customers or service. And under RCW 80.28.010(1), the rate must be just, fair, reasonable, and sufficient. Under

26

this standard, the city has reasonable discretion to fix rates, its rates are

presumptively reasonable, and those challenging the rates bear the burden of proof

to show the rates are excessive and disproportionate to the service rendered. Faxe,

48 Wn.2d at 352. This inquiry is governed by " 'two controlling considerations,' "

consisting of the " 'value of the services' " to the public and " 'fair

compensation' " for the supplier. Id. at 351 (quoting 3 JOHN F. DILLON,

COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS, § 1330, at 2265 (5th

ed. 1911)). This requires that the rates "shall not be so low as, among other things,

to deprive the company of means to render adequate service, nor so high as to

unduly burden the public." Id. at 350-51.

We reverse and remand for proceedings consistent with this opinion.

_____
Birk, J.

I CONCUR:

_____
Lawrence-Berrey, J.

No. 38792-5-III

F<small>EARING</small>, C.J. (Concurring) —

How dare you presume to say that to be comanded which is not mentioned, & to make so much adoe about nothing?  John Whitgift, *The defense of the aunswere to the Admonition, against the replie of T.C* (1574) (spelling and punctuation in original).

We know the phrase "much ado about nothing" as the title to a Shakespeare play published in 1599.  But unlike abundant expressions entering the English language through the pen of Bill Shakespeare, an earlier writer first scripted the saying.  This idiom describes this appeal.

I concur in Judge Birk's excellent opinion and agree to reverse the superior court's ruling.  I write separately to emphasize one point implied on pp. 20 to 27 of the lead opinion, wherein Judge Birk discusses the reconcilability of the two statutory schemes.  This appeal is about nothing.

Bulky RCW 35.92.010 reads in part:

A city or town may construct, condemn and purchase, purchase, acquire, add to, alter, maintain and operate waterworks, including fire hydrants as an integral utility service incorporated within general rates, within or without its limits, for the purpose of furnishing the city and its inhabitants, and any other persons, with an ample supply of water for all purposes, public and private, including water power and other power derived therefrom, with full power to regulate and control the use, distribution, and price thereof: PROVIDED, *That the rates charged must be uniform for the same class of customers or service. . . .*
*In classifying customers served or service furnished, the city or town governing body may in its discretion consider any or all of the following factors: The difference in cost of service to the various customers; location of the various customers within and without the city or town; the difference*

1

> *in cost of maintenance, operation, repair, and replacement of the various parts of the system; the different character of the service furnished various customers; the quantity and quality of the water furnished; the time of its use; the achievement of water conservation goals and the discouragement of wasteful water use practices; capital contributions made to the system including, but not limited to, assessments; and any other matters which present a reasonable difference as a ground for distinction. No rate shall be charged that is less than the cost of the water and service to the class of customers served.*

(Emphasis added.) The first sentence of RCW 80.28.010(1) succinctly declares:

> All charges made, demanded or received by any gas company, electrical company, wastewater company, or water company for gas, electricity or water, or for any service rendered or to be rendered in connection therewith, shall be *just, fair, reasonable and sufficient*.

(Emphasis added.) Despite RCW 35.92.010 being lengthier, the italicized portions of the two statutes convey the same meaning.

Neither party has explained to this court how the outcome of the case might differ if the superior court applies RCW 80.28.010 rather than employing RCW 35.92.010 to the facts of the case. Neither party has presented any scenario, under which the outcome of a dispute as to the lawfulness of municipal water rates would depend on which of the two statutes a court engages. Neither party has enlightened the court as to how a ruling might differ if the superior court applied both statutes as opposed to harnessing only one of the two statutes.

I concur:

_____
Fearing, C.J.